## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| IMRAN CHAUDHRI, individually, and on behalf of all others similarly situated, | Civil Action No. 2:11-CV-05504-SDW-MCA |
| Plaintiff, | |
| - against - | **MOTION TO DISMISS** |
| OSRAM SYLVANIA, INC., and OSRAM SYLVANIA PRODUCTS, INC., | **Oral Argument Requested** |
| Defendants. | **Return Date: March 19, 2012** |

### MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT UNDER FEDERAL RULE 12(b)(6)

Brant W. Bishop, P.C. (*pro hac vice*)
Eunnice H. Eun (*pro hac vice*)
KIRKLAND & ELLIS LLP
655 Fifteenth Street, N.W.
Washington, D.C.  20005
Phone:  (202) 879-5000
Brant.Bishop@kirkland.com
Eunnice.Eun@kirkland.com

Stephen M. Orlofsky
David C. Kistler
New Jersey Resident Partners
BLANK ROME LLP
301 Carnegie Center, 3d Floor
Princeton, N.J. 08540
Telephone: (609) 750-7700
Orlofsky@blankrome.com
Kistler@blankrome.com

*Counsel for Defendants*
*OSRAM SYLVANIA, INC. and*
*OSRAM SYLVANIA PRODUCTS, INC.*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................... iii

INTRODUCTION ...............................................................................................1

FACTUAL BACKGROUND ................................................................................2

    A.    The Parties ..........................................................................................2

    B.    Sylvania's Product Families ...............................................................2

    C.    SilverStar® 9004 Head Lamps and Packaging.....................................4

    D.    SilverStar® ULTRA Video Advertisement.............................................5

    E.    Plaintiff's Claims ...............................................................................6

STANDARD OF REVIEW ..................................................................................6

ARGUMENT ......................................................................................................8

I.    Plaintiff Fails To State A Claim Under New Jersey's Consumer Fraud Act......................8

    A.    Unlawful Conduct..............................................................................9

        1.    Affirmative Misrepresentations ...............................................9

        2.    Knowing Omissions...............................................................13

    B.    Causal Link ......................................................................................15

II.    Plaintiff Fails To State A Claim For Unjust Enrichment Because He Purchased The Headlights From A Third-Party Retailer. ..................................16

III.    Plaintiff Does Not Provide Specific Facts To Support An Inference That Sylvania Knowingly Made A Material Misrepresentation. ............................18

IV.    Plaintiff Fails To State A Claim Of Negligent Misrepresentation Because He Does Not Sufficiently Allege That He Reasonably Relied On An Incorrect Statement.......................................19

V.    Plaintiff Does Not Identify An Express Warranty, Nor Any Inference That Sylvania Breached. ..................................21

VI.    Plaintiff Is Not Entitled To Declaratory And Injunctive Relief........................22

i

**Page**

CONCLUSION.................................................................................................................23

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Ashcroft v. Iqbal*,
    556 U.S. 662, 129 S. Ct. 1937 (2009) ........................................................... 6, 7, 14, 19, 20

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ..................................................................... 6, 7, 13, 14, 15, 19

*Cooper v. Samsung Elecs. Am., Inc.*,
    Civ. No. 07-3853 (JLL), 2008 WL 4513924 (D.N.J. Sept. 30, 2008),
    *aff'd*, 374 F. App'x 250 (3d. Cir 2010) ............................................................ 17

*DiCarlo v. St. Mary Hosp.*,
    530 F.3d 255 (3d Cir. 2008) ........................................................................ 22

*Durant v. Horton*,
    Civ. No. 07-93 (JAG), 2008 WL 2510661 (D.N.J. June 19, 2008) ................................... 7

*Frederico v. Home Depot*,
    507 F.3d 188 (3d Cir. 2007) ............................................................... 8, 9, 19, 21

*Genesis Bio-Pharm., Inc. v. Chiron Corp.*,
    27 F. App'x 94 (3d Cir. 2002) ....................................................................... 7

*Gennari v. Weichert Co. Realtors*,
    148 N.J. 582, 691 A.2d 350 (1997) .............................................................. 18, 19

*Glauberzon v. Pella Corp.*,
    Civ. No. 10-5929 (JLL), 2011 WL 1337509 (D.N.J. Apr. 7, 2011) ................................ 22

*Hassler v. Sovereign Bank*,
    374 F. App'x 341 (3d Cir. 2010) .................................................................... 9

*Hughes v. Panasonic Consumer Elecs., Co.*,
    Civ. No. 10-846 (SDW), 2011 WL 2976839 (D.N.J. July 21, 2011) ......... 8, 16, 17, 18, 21

*In re Burlington Coat Factory Sec. Litig.*,
    114 F.3d 1410 (3d Cir. 1997) ................................................................ 2, 7, 23

*In re Toshiba Am. DVD Mktg. & Sales Practices Litig.*,
    Civ. No. 08-939 (DRD), 2009 WL 2940081 (D.N.J. Sept. 11, 2009) .............. 7, 15, 21, 22

*Kaufman v. i-Stat Corp.*,
    754 A.2d 1188 (N.J. 2000) ......................................................................... 20

**Page(s)**

*Laney v. Am. Standard Cos., Inc.*,
  Civ. No. 07-3991 (PGS), 2010 WL 3810637 (D.N.J. Sept. 23, 2010) ............................ 17

*Lum v. Bank of Am.*,
  361 F.3d 217 (3d Cir. 2004) ...................................................................................... 8, 19

*Maniscalco v. Brother Int'l Corp. (USA)*,
  627 F. Supp. 2d 494 (D.N.J. 2009) .................................................................................. 17

*Mason v. Coca-Cola Co.*,
  774 F. Supp. 2d 699 (D.N.J. 2011) .......................................................................... 7, 8, 20

*McKenna v. Bank of Am.*,
  Civ. No. 10-1848 (JAP), 2010 WL 2985643 (D.N.J. July 26, 2010) .............. 2, 18, 19, 20

*NXIVM Corp. v. Sutton*,
  Civ. No. 06-cv-1051 (DMC), 2007 WL 1876496 (D.N.J. June 27, 2007) ........................ 2

*Rolo v. City Investigating Co. Liquidating Trust*,
  155 F.3d 644 (3d Cir. 1998) .............................................................................................. 8

*St. Matthew's Baptist Church v. Wachovia Bank Nat'l. Ass'n*,
  Civ. A. 04-4540 (FLW), 2005 WL 1199045 (D.N.J. May 18, 2005) ................................ 7

*Torres-Hernandez v. CVT Prepaid Solutions, Inc.*,
  Civ. No. 3:08-cv-1057-FLW, 2008 WL 5381227
  (D.N.J. Dec. 17, 2008) ............................................................................ 13, 16, 17, 18, 19

*United States v. Pozsgai*,
  999 F.2d 719 (3d Cir. 1993) .............................................................................................. 5

*VRG Corp. v. GKN Realty Corp.*,
  641 A.2d 519 (N.J. 1994) ............................................................................................ 17, 18

*Walzer v. Muriel Siebert & Co.*,
  Civ. No. 04-5672 (DRD), 2010 WL 3174458 (D.N.J. Aug. 10, 2010) ............................ 23

**STATUTES**

N.J. Stat. Ann. § 12A:2-313 ................................................................................................ 21

N.J. Stat. Ann. § 56:8-2 ........................................................................................................ 8

**RULES**

Fed. R. Civ. P. 9(b) ......................................................................................................... 8, 18

Fed. R. Evid. 201(b) ............................................................................................................. 5

iv

**INTRODUCTION**

Given the opportunity to amend his complaint, plaintiff Imran Chaudhri still fails to allege facts sufficient to state a cognizable claim with respect to either OSRAM Sylvania, Inc., or OSRAM Sylvania Products, Inc.  And where he departs from the generic to allege specific facts, such as attaching product packaging or product charts, those facts entirely undercut his claims.

Plaintiff's amended complaint alleges that defendants used "false and misleading packaging and advertising" in connection with the sale of SilverStar® replacement automotive headlights.  *See*, *e.g.*, Am. Compl. ¶ 1.  More specifically, Mr. Chaudhri alleges that defendants advertised their SilverStar® headlights as brighter, with greater down road and side road visibility, but that defendants failed to disclose that those comparisons were not made under "similar testing conditions."  *Id.*  The amended complaint charges both defendants with violation of the New Jersey Consumer Fraud Act, unjust enrichment, common law fraud, negligent misrepresentation, and breach of express warranty, and seeks injunctive and declaratory relief.

Mr. Chaudhri's allegations fail to satisfy pleading requirements for his claimed causes of action.  Plaintiff's allegations are largely based on self-serving statements of his own perception of the headlights and are accompanied by no factual support.  Where he does provide factual support, those allegations are often contradicted by other allegations in plaintiff's amended complaint, materials incorporated into the amended complaint, or by simple and inexorable scientific facts.  Accordingly, plaintiff's own allegations render his claims implausible and preclude any inference that Sylvania is liable for misconduct.

In short, the amended complaint boils down to legal conclusions and self-contradictory or self-serving factual allegations.  For these reasons and those stated below, plaintiff's amended complaint should be dismissed.

## FACTUAL BACKGROUND

### A.    The Parties

Plaintiff Imran Chaudhri claims he purchased a package of Sylvania SilverStar® 9004 replacement headlights for his personal use from a Walmart in Piscataway, New Jersey on March 11, 2009.  *Id.* ¶ 29.

He has sued both OSRAM Sylvania, Inc., and OSRAM Sylvania Products, Inc., which he collectively refers to as "Sylvania."[1]  *See id.* at 1.  Sylvania "manufactures and sells, among other things, automotive lighting products," *id.* ¶ 9, and sells those products, including the SilverStar® replacement headlights, through retail stores.  *Id.* ¶ 12.

### B.    Sylvania's Product Families

Sylvania's various automotive lighting products are grouped into different product families.  *See id.* ¶ 27; s*ee  also* http://www.sylvania.com/en-us/products/automotive/Pages/high-performance-series.aspx.[2]  Sylvania's halogen headlights include the following five product families:  SilverStar® ULTRA, SilverStar®, Ecobright®, Xtravision®, and standard halogen lights.  *See* Am. Compl. ¶ 27.   These product families offer varying levels of down road visibility, side road visibility, brightness, and color temperature.  *Id.*

---

[1]    Effective October 1, 2010, OSRAM Sylvania, Inc. was merged into OSRAM Sylvania Products, Inc., and renamed OSRAM Sylvania, Inc.  Accordingly, only the entity OSRAM Sylvania, Inc. exists today.

[2]    "On a motion to dismiss, the Court may properly consider documents specifically referenced in the complaint . . ."  *McKenna v. Bank of Am.*, Civ. No. 10-1848 (JAP), 2010 WL 2985643, at *3 n.2 (D.N.J. July 26, 2010).  The Court may consider "documents outside the pleadings . . . [including] websites . . .  because they are either incorporated into the pleadings by reference or integral to or upon which the claim is based."  *NXIVM Corp. v. Sutton*, Civ. No. 06-cv-1051 (DMC), 2007 WL 1876496, at *6 (D.N.J. June 27, 2007) (citing *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)).

**Compare SYLVANIA halogen lighting products to find the one that is right for your needs.**

| Downroad Visibility | Product Families | Replacing worn standard bulbs provides | | | Product Benefits | Color Temperature |
|---|---|---|---|---|---|---|
| | | UP TO | UP TO | UP TO | | |
| | SILVERSTAR® ULTRA FOR ULTRA NIGHT VISION | 50% Increase in BRIGHTNESS | 40% Further DOWN ROAD | 50% Wider SIDE ROAD | Brightest and Whitest Light | ~4100K |
| | SILVERSTAR® HIGH PERFORMANCE LIGHTING | 35% Increase in | 30% Further DOWN ROAD | 35% Wider SIDE ROAD | Brighter and Whiter Light for safety & style | ~4000K |
| | ECObright® For A Cleaner Environment | 25% Increase in BRIGHTNESS | Your environmental choice. Save energy - Save money. Reduce carbon dioxide ($CO_2$) emissions. | | Energy Saving Brighter Light | ~3200K |
| | XTRAVISION® | 30% Increase in BRIGHTNESS | 25% Further DOWN ROAD | - - - | Brighter Light more light on the Road | ~3200K |
| | Standard Halogen | - - - | - - - | - - - | Basic Performance | ~3100K |

Headlights dim over time.   Always replace in pairs.   Evaluate once a year for optimum performance.   SEE THE WORLD IN A NEW LIGHT   SYLVANIA

The differences between the product families are summarized in the above chart, included in plaintiff's amended complaint. *Id.* This chart explains that "[h]eadlights dim over time," and that when replacing worn standard bulbs, the SilverStar® ULTRA product family offers up to a 50 percent increase in brightness and a color temperature of approximately 4100K, while the SilverStar® product family offers up to a 35 percent increase in brightness and a color temperature of approximately 4000K. *Id.*[3]

---

[3] As a matter of background, there are at least 16 different types of headlights within the SilverStar® product family itself, which vary in terms of design and brightness, corresponding to the intended use and configuration in automobiles whose bulbs they are designed to replace. *See* Am. Compl. Ex. B . For example, certain models are single filament and work exclusively as high beam or low beam headlights; others are dual filament and work as both high beam and low beam headlights. *Id.* There are also fog lights in the SilverStar® product family. *Id.* The SilverStar® 9004 model of headlights, which plaintiff alleges to have purchased, is a member of the SilverStar® product family and features a dual filament for both high and low beam. *See id.* ¶ 9 & Ex. B.

### C.      SilverStar® 9004 Head Lamps and Packaging

Plaintiff alleges that he purchased "one package of two Sylvania 9004 SilverStar® head lamps."  *Id.* ¶ 29.  He attaches to his amended complaint photocopies of the front and back packaging for the SilverStar® 9004 ST/2 model of headlights.  *Id.* Ex. A.  Graphics on the front of the packaging depict that these particular headlights are "UP TO 35%*" brighter, provide for "UP TO 30%*" farther visibility down the road, and provide for "UP TO 35%*" more visibility across the road.  *Id.*  Each of these graphics prominently displays asterisks ("*") in the top right corner, and corresponding text ***on the front*** of the packaging explains that these figures represent performance when "[r]eplacing worn standard bulbs . . . ."  *Id.*

The back of the same packaging compares the color temperature, brightness, down road visibility, and side road visibility of worn standard bulbs and Sylvania's standard halogen, Xtravision®, Cool Blue®, SilverStar® and SilverStar® ULTRA product families.  *Id.*  The packaging also states that, with respect to all of its comparisons, the "[c]laims [are] based on measured comparisons between SilverStar® product family at 100% light output and standard halogen bulbs at 80% light output."  *Id.*  It further explains the rationale for this comparison: "Headlamps dim over time by 20% or more and timely replacement results in increased lighting performance."  *Id.*  The packaging adds that "[a]ctual performance may vary by product type, vehicle model and usage."  *Id.*  The packaging also discloses that "[b]ulbs with greater brightness may require replacement at more frequent intervals."  *Id.* Ex. A & ¶ 24.

The packaging further states that the brightness comparison is "based on coil luminance measurements."  *Id.* Ex. A.  "Luminance" is a measure of "the luminous intensity of a surface in a given direction per unit of projected area."  Merriam-Webster's Collegiate® Dictionary 740 (11th ed. 2005).  Luminance differs from "lumens," which is "a unit of luminous flux equal to

the light emitted in a unit solid angle by a uniform point source of one candle intensity." *Id.*[4]  In other words, lumens represent overall light emission, while luminance is the concentration of light projected in a particular direction.

### D.     SilverStar® ULTRA Video Advertisement

Sylvania produced a video advertisement for its SilverStar® ULTRA headlights.  Am. Compl. ¶ 26.  SilverStar® ULTRA is a different product family than SilverStar®, and the SilverStar® 9004 model of headlights that plaintiff alleges to have purchased is not a member of the SilverStar® ULTRA product family.     *See id.*  ¶¶ 9,  27 &  Ex.  A; *see also* http://www.sylvania.com/en-us/products/automotive/Pages/high-performance-series.aspx.

In the SilverStar® ULTRA video advertisement, the announcer says SilverStar® ULTRA headlights are "up to 50% brighter" and let you "see up to 40% farther" and "up to 50% wider."  Am. Compl. ¶ 26.  As the announcer says this, text on the screen directs viewers to "[s]ee www.sylvania.com/auto  for  comparison  information."   *Id.*  ¶ 27.   This  website  contains information about Sylvania's automotive lighting, including a headlight comparison chart.  *See* http://www.sylvania.com/auto;  http://www.sylvania.com/en-us/products/automotive/Pages/high-performance-series.aspx.  The chart compares the SilverStar® ULTRA product family with the SilverStar®, Xtravision®, and standard halogen bulb product families.  *Id.*  The chart explains

---

[4]     A court may take judicial notice of books meeting the accuracy requirement of Fed. R. Evid. 201(b).  *See, e.g.*, *United States v. Pozsgai*, 999 F.2d 719, 731 (3d Cir. 1993); Fed. R. Evid. 201(b) ("The court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.").  Consistent with the scientific definition of "luminance" a glossary on Sylvania's website further explains that luminance is "light reflected in a particular direction" and that it is "the photometric quantity most closely associated with brightness perception, measured in units of luminous intensity (candelas) per unit area (square feet or square meters)."     *See* http://www.sylvania.com/en-us/tools-and-resources/Pages/business-products-glossary.aspx.  In its definition of the word "brightness," Sylvania's online glossary simply states "see Luminance."  *See id.*

that "[h]eadlights dim over time," and states that "[r]eplacing worn standard bulbs provides . . . UP TO" the stated percentages of improved performance.  *Id.*

### E.    Plaintiff's Claims

Plaintiff alleges that he based his purchase of the SilverStar® 9004 headlights on the "representations on the front of the product packaging and the chart on the back of the product packaging as described above."  Am. Compl. ¶ 29.  Plaintiff does not say he saw the SilverStar® ULTRA video advertisement he refers to before buying SilverStar® replacement lamps, *see id.* ¶¶ 26-29, or how he relied on the video advertisement for one product family in buying headlights (SilverStar® 9004 model) from a separate product family.  *See id.*

The packaging plaintiff attaches to the amended complaint identifies it as a product of "OSRAM SYLVANIA Products Inc. Hillsboro, NH 03244," and also notes that "SYLVANIA is a registered trademark of OSRAM SYLVANIA INC."  *Id.* Ex. A.  Plaintiff has sued both OSRAM Sylvania Products, Inc. and OSRAM Sylvania Inc.  He asserts six causes of action:  (1) violation of the New Jersey Consumer Fraud Act, *id.* ¶¶ 46-53; (2) unjust enrichment, *id.* ¶¶ 54-63; (3) common law fraud, *id.* ¶¶ 64-71; (4) negligent misrepresentation, *id.* ¶¶ 72-79; (5) breach of express warranty, *id.* ¶¶ 80-86; and (6) a claim for injunctive and declaratory relief, *id.* ¶¶ 87-90.  The flaws in each are discussed in Argument Sections I-VI, below.

### STANDARD OF REVIEW

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  To be plausible on its face, a complaint must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Not everything that could be characterized as a "factual matter" counts, however. For example, "[a] court need not credit either 'bald assertions' or 'legal conclusions.'" *Mason v. Coca-Cola Co.*, 774 F. Supp. 2d 699, 702 (D.N.J. 2011) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410 (3d Cir. 1997)); *see also In re Toshiba Am. DVD Mktg. & Sales Practices Litig.*, Civ. No. 08-939 (DRD), 2009 WL 2940081, at *7 (D.N.J. Sept. 11, 2009) (stating that a court is "'not bound to accept as true a legal conclusion couched as a factual allegation.'") (quoting *Iqbal*, 129 S. Ct. at 1950). Moreover, if the court finds that "facts that are alleged to be true in [the] . . . complaint are contradicted by facts that can be judicially noticed, the contradicted facts in the complaint are not to be deemed as true upon consideration of the motion to dismiss." *Durant v. Horton*, Civ. No. 07-93 (JAG), 2008 WL 2510661, at *2 (D.N.J. June 19, 2008); *see also St. Matthew's Baptist Church v. Wachovia Bank Nat'l. Ass'n*, No. Civ. A. 04-4540 (FLW), 2005 WL 1199045, at *3 (D.N.J. May 18, 2005) ("To the extent that Plaintiff's allegations are contradicted by the documents attached to the Complaint upon which its claims are based, the Court need not accept such allegations as true.") (citing *Genesis Bio-Pharm., Inc. v. Chiron Corp.*, 27 F. App'x 94, 99-100 (3d Cir. 2002)).[5] Furthermore, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 555). "Thus, 'a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.'" *In re Toshiba*, 2009 WL 2940081, at *7 (quoting *Iqbal*, 129 S. Ct. at 1950).

Claims sounding in fraud also must satisfy the heightened pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure, which requires that "a party must state with

---

[5]   Unless otherwise indicated, all internal quotations marks and citations are omitted.

particularity the circumstances constituting fraud."  Fed. R. Civ. P. 9(b).  "In order to satisfy

Rule 9(b), plaintiffs must plead with particularity the circumstances of the alleged fraud in order

to place the defendants on notice of the precise misconduct with which they are charged, and to

safeguard defendants against spurious charges of immoral and fraudulent behavior."  *Lum v.

Bank of Am.*, 361 F.3d 217, 223-24 (3d Cir. 2004).   "At the least, this includes specific

allegations as to which fraudulent tactics were used against them and should include some

allegations of what was said to them to induce them to [make their purchases]."  *Rolo v. City

Investigating Co. Liquidating Trust*, 155 F.3d 644, 659 (3d Cir. 1998).  Moreover, "[a] plaintiff

must allege the 'who, what, when, where, and how' of the claim," *Mason*, 774 F. Supp. 2d at 702

(quoting *Lum*, 361 F.3d at 224), "or otherwise inject precision or some measure of substantiation

into a fraud allegation."  *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007) (citing

*Lum*, 361 F.3d at 224).

## ARGUMENT

### I.      Plaintiff Fails To State A Claim Under New Jersey's Consumer Fraud Act.

New Jersey's Consumer Fraud Act ("CFA") aims "to protect consumers against acts of

deception and fraud," *Hughes v. Panasonic Consumer Elecs., Co.*, Civ. No. 10-846 (SDW), 2011

WL 2976839, at *10 (D.N.J. July 21, 2011), and provides that "any unconscionable commercial

practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing,

concealment, suppression, or omission of any material fact with intent that others rely upon such

concealment, suppression or omission, in connection with the sale or advertisement of any

merchandise . . . is declared to be an unlawful practice . . ."  N.J. Stat. Ann. § 56:8-2.  "To state a

claim [under the CFA], a plaintiff must allege 1) unlawful conduct by defendant; 2) an

ascertainable loss by plaintiff; and 3) a causal relationship between the two."  *Hassler v.

Sovereign Bank*, 374 F. App'x 341, 343 (3d Cir. 2010).  Plaintiff's allegations are insufficient as

to the first and third of these elements, and his first cause of action should accordingly be dismissed.

### A.  Unlawful Conduct

As a threshold matter, the amended complaint fails to allege adequately the kind of "unlawful conduct" that the CFA targets.  Unlawful conduct under the CFA takes the form of affirmative acts, knowing omissions, or regulatory violations.  *See Frederico*, 507 F.3d at 202. Plaintiff does not allege any regulatory violations, but bases his amended complaint on affirmative acts—apparently statements on the product packaging and a video advertisement, found on the internet, for a different product line of auto headlights—and various purported omissions.  In both respects, plaintiff's allegations fall short.

### 1.  Affirmative Misrepresentations

Plaintiff challenges certain statements made in a SilverStar® ULTRA video advertisement as misleading.  *See* Am. Compl. ¶ 26.  Specifically, plaintiff takes issue with statements that Silverstar® ULTRA headlamps "are 'up to 50% brighter,' allow one to 'see up to 40% farther,' and 'up to 50% wider,'" and the advertisement's closing statement "'[s]ee farther, see wider, see better.'"  *Id.*  But plaintiff's claim suffers from a number of fatal deficiencies.

As an initial matter, plaintiff references an advertisement marketing headlights from a different product line (SilverStar® ULTRA) than the headlamps that are the basis of plaintiff's amended complaint (SilverStar®).  Plaintiff purchased "one package of two Sylvania 9004 SilverStar® head lamps," *id.* ¶ 29, which is a member of the SilverStar® product family, ***not*** the SilverStar® ULTRA product family.  *Id.* ¶¶ 27, 9.  While they bear similar names, the SilverStar® ULTRA product family has characteristics distinct from the products sold in the SilverStar® line of headlamps.  For example, as the very packaging plaintiff attaches to the amended complaint makes clear, the SilverStar® ULTRA product family claims different

brightness and projection characteristics than the SilverStar® 9004. *Id.* Ex. A. The chart plaintiff reproduces in the amended complaint further explains that SilverStar® ULTRA products offer up to 50% increase in brightness when replacing worn standard bulbs and have a color temperature of approximately 4100K, while the SilverStar® product family offers up to 35% increase in brightness when replacing worn standard bulbs and has a color temperature of approximately 4000K.[6] *Id.* ¶ 27 (also indicating that SilverStar® ULTRA bulbs are "for ultra night vision," while SilverStar® bulbs are "high performance lighting"). Plaintiff cannot claim that he was actionably misled by a video that advertised a different product, making different claims, from the one he purchased.

Plaintiff also bases his claim of affirmative misrepresentation on a bar chart on the back of the SilverStar® packaging that compares the brightness, down road visibility, and side road visibility between worn standard bulbs and Sylvania's standard halogen, Xtravision®, Cool Blue®, SilverStar® and SilverStar® ULTRA product families. *See id.* ¶ 15. Plaintiff claims that "[b]ecause there is no description whatsoever on the SilverStar packaging defining what a bar quantifies, the reasonable interpretation by the average consumer and Plaintiff, is that the SilverStar bulb is 4 times brighter . . . has three times the down road visibility . . . [and] has four times the [side] road visibility as the Standard Halogen bulb." *Id.* Putting aside the obvious fact that the bar chart illustrates a relative ordinal comparison between product families rather than an absolute numerical comparison, the ***front*** of the product packaging itself provides a numerical

---

[6]    The fact that SilverStar® and SilverStar® ULTRA are different product families would be apparent to any consumer purchasing replacement bulbs. For example, if one conducts a search for appropriate replacement bulbs for a 1993 Acura Integra on the website referenced in plaintiff's amended complaint, the following bulbs are listed as options for "[h]igh & low beam headlamp" replacements: 9004SU SilverStar® Ultra, 9004ST SilverStar®, 9004EB EcoBright, 9004XV XtraVision, and 9004CB Cool Blue. *See* http://www.sylvania.com/en-us/applications/automotive-lighting-systems/Pages/lrgallbulbs.aspx?year=1993&qual=&model=1134&make=2.

comparison that directly contradicts plaintiffs supposedly "reasonable interpretation" of the chart.

This is critical because plaintiff himself contends that he "based his purchase of the 9004 SilverStar® head lamps on the representations on the front of the product packaging." *See id*. ¶ 29.  As plaintiff himself points out, the front of the packaging states that the SilverStar® 9004 bulbs he purchased are "UP TO 35%" brighter, allow one to see "UP TO 30%" farther down road, and allow for "UP TO 35%" more side road visibility than standard halogen bulbs.  *Id.* Ex. A & ¶ 14.  As such, it is hardly "reasonable" to interpret the bar chart on the back of the same packaging to mean that the head lamps are actually four times or 400 percent brighter, have 300 percent better down road visibility, and 400 percent better side road visibility than those standard bulbs.

To shore up his deliberate and contradictory misinterpretation of plain statements on the product packaging, plaintiff makes a variety of self-serving, confused, and indisputably false statements about halogen bulbs.  First, he states that Sylvania standard halogen headlights and SilverStar® headlights have the same light output, referring to product specifications of bulbs' "lumens" output.  *Id*. ¶ 19.  But plaintiff conflates "lumens," a unit of measure of overall light output, with the correct measure of a headlight's light concentration projected in a given area, known as "luminance."  *See supra* at 4-5.  Indeed, the packaging itself makes clear that Sylvania is making a comparison based on such light projection characteristics, explaining that the "[b]rightness comparison [is] based on coil ***luminance*** measurements."  Am. Compl. Ex. A (emphasis added).

Plaintiff also complains that he did not subjectively perceive brightness differences between the SilverStar® lights and other halogen bulbs.  *See id.* ¶¶ 30, 32.  But this does not

indicate any misrepresentation on Sylvania's part.  The SilverStar® product packaging makes no representations about individuals' subjective perceptions, under circumstances that plaintiff does not even relate.  (How old were the bulbs plaintiff compared?  In what model and year car were the bulbs installed?  Where did he shine the lights?  What was the ambient lighting?  Were the headlight lenses or reflectors aged, dirty or clouded?)  Instead, the product packaging compares *measurements* of coil luminance, comparing the SilverStar® bulb brightness to worn bulbs, represented as 80 percent of new standard halogen bulbs' brightness.  Plaintiff's subjective impressions are self-serving and do nothing to establish an affirmative misrepresentation, particularly where the product packaging clearly states that "performance may vary."  *Id.* Ex. A.

Plaintiff then alleges that standard halogen bulbs do not dim over time.  Plaintiff provides no support for this bald assertion that halogen lights are immune from the laws of thermodynamics, nor can he.  As a matter of inexorable scientific fact, bulbs are subject to "lumen depreciation," which is defined as "[t]he decrease in lumen output that occurs as a lamp is operated, until failure."    http://www.lrc.rpi.edu/programs/nlpip/lightinganswers/mr16/glossary.asp.[7]  Accordingly, the Society of Automotive Engineers International establishes specifications for testing halogen bulbs, including testing of bulbs' "luminous intensity maintenance."  These requirements are designed to assure that halogen bulbs retain 70 percent of their initial brightness by the time they reach their median life span (referred to as B50).  *See* Specification for Testing Automotive Halogen Light Sources, SAE/USCAR-14 Rev. 2, at §§ 7.2 - 7.2.3 (attached as Ex. A to the Declaration of Stephen M. Orlofsky dated February 13, 2012).

---

[7]    This definition is provided by the Lighting Research Center ("LRC"), which is part of the Rensselaer Polytechnic Institute.  The LRC is the "leading university-based research center devoted to lighting," with an "international reputation as a reliable source for objective information about lighting technologies, applications, and products."  *See* http://www.lrc.rpi.edu/aboutUs/index.asp.  Useful background information on scientific lighting terms is also available at sylvaniaautomotivecatalog.wbdev.com/Glossary.aspx.

Plaintiff's assertion that halogen bulbs do not dim over time is premised on ignorance of these basic scientific principles and definitions and is therefore simply not "enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 545.

### 2.    Knowing Omissions

Plaintiff has also failed to allege that Sylvania knowingly omitted information from its packaging or advertising **intending** to mislead plaintiff. *See Torres-Hernandez v. CVT Prepaid Solutions, Inc.*, Civ. No. 3:08-cv-1057-FLW, 2008 WL 5381227, at *6 (D.N.J. Dec. 17, 2008) ("[W]hen the alleged consumer fraud is an omission, intent is an essential element of the charge."). Indeed, materials in plaintiff's amended complaint undermine the charge of intentional deception that he levels against SilverStar® products.

Plaintiff first contends that "[o]n the front of the packaging for its 9004 SilverStar® head lamp" are diagrams stating that "Silver Star bulbs are up to 35% brighter, you can see up to 30% further down road, and up to 35% wider, than standard halogen headlights," but that "[n]owhere in the front of the packaging does Sylvania explain how it derived the comparisons." Am. Compl. ¶ 14. **This is false.** As evidenced by the photocopy of SilverStar® packaging attached to plaintiff's amended complaint, the figures on the front of the packaging are each accompanied with an asterisk ("*") and corresponding text, again **on the front**, stating that the claimed improvements are based on "[r]eplacing worn standard bulbs." *Id.* Ex. A. The packaging also qualifies its representations by stating that the headlights can be "up to" a certain amount brighter, or wider, or farther. A manufacturer does not intentionally mislead by stating what common sense makes clear: the words "up to" highlight that the headlights are capable of performing in a range "up to" the maximum number specified, but not necessarily the maximum number in every installation. Thus, plaintiff's claim does not have "facial plausibility" because plaintiff has not offered "factual content that allows the court to draw the reasonable inference

13

that the defendant is liable for the misconduct alleged."  *Iqbal*, 129 S. Ct. at 1494 (citing *Twombly*, 550 U.S. at 570).

Plaintiff further complains that the SilverStar® packaging is false and misleading because while it "touts its SilverStar® headlights as being brighter, providing a wider beam, and enabling the user to see further down the road than standard halogen headlights," it "omits to disclose to consumers that it was not basing the comparisons under similar testing conditions."  Am. Compl. ¶ 1.  ***Again, this is false.***  As plaintiff states in his amended complaint, "Sylvania has a disclaimer that they are comparing the Silver Star [sic] headlights at 100% brightness and halogen headlights at only 80% brightness."  *Id.* ¶ 17 (admitting that the back of the packaging states that "[c]laims [are] based on measured comparisons between SilverStar® product family at 100% light output and standard halogen bulbs at 80% light output").  Not only does the packaging disclose the basis for this comparison, it also explains why such a comparison is relevant:  "Headlamps dim over time by 20% or more and timely replacement results in increased lighting performance."  *Id.* Ex. A.  Additional disclosures on the packaging further advise that the headlights' comparative brightness may vary, stating that:  "Actual performance may vary by product type, vehicle model and usage."  *Id.*  In short, plaintiff's amended complaint itself establishes that Sylvania disclosed the basis of the comparison, explained why such a comparison was relevant, and advised that the product's performance may vary.

Plaintiff also contends that Sylvania fails to disclose that SilverStar® headlights have a shorter lifespan than standard halogens.  *Id.* ¶ 24.  But again, plaintiff's own amended complaint admits that the product packaging contains a "disclaimer" about the lifespan of SilverStar® headlights, which warns that "[b]ulbs with greater brightness may require replacement at more frequent intervals."  *Id.*  While the amended complaint quibbles with use of the term "may,"

14

rather than "will," this is an immaterial semantic difference that does not overcome the fact that Sylvania alerted consumers that greater brightness can come at the expense of longer bulb life. There is no plausible claim of intentional concealment with respect to the basis for the comparisons between headlights or the lifespan of SilverStar® headlights: "In order to intend that others rely on the concealment of a fact, the fact must, of course, actually be *concealed*." *In re Toshiba*, 2009 WL 2940081, at *12 (emphasis in original). Sylvania's disclosures foreclose a claim of unlawful conduct under the CFA based on a knowing omission.

Nor has plaintiff stated a claim on the basis that the representations are somehow without scientific support. Plaintiff's allegations on this point are wholly conclusory; he simply states that the representations on the packaging "are without scientific support and are otherwise misleading." Am. Compl. ¶ 18. But plaintiff does not offer a single fact to support this vague claim. In any event, plaintiff's claim founders on plaintiff's own allegations—the packaging plaintiff challenges discloses that the "[b]rightness comparison [is] based on coil luminance measurements." *Id.* Ex. A. Plaintiff does not assert that this is false. His conclusory amended complaint is not "enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 545.

## B.    Causal Link

Plaintiff also fails to plead sufficiently a causal nexus between the alleged misrepresentations and his purported loss. Plaintiff alleges simply that he "based his purchase of the 9004 SilverStar® head lamps on the representations on the front of the product packaging and the chart on the back of the product packaging" as described in his amended complaint. Am. Compl. ¶ 29. He makes no mention of whether or how he relied on the video advertisement in purchasing the SilverStar® replacement bulbs. But "[t]o properly plead a causal nexus, a plaintiff cannot rely on legal conclusions that fail to allege 'when statements were made or when

15

the plaintiffs were exposed to the statements.'"  *Torres-Hernandez*, 2008 WL 5381227, at *7.

Plaintiff's allegations thus fail as they relate to the SilverStar® ULTRA video advertisement.

Plaintiff provides no facts about when Sylvania posted the video advertisement referred

to in the amended complaint, simply stating that it was "[d]uring the [c]lass [p]eriod," Am.

Compl. ¶ 26, and he fails to allege when, if ever, he actually saw it.  *See id.*; *see also Hughes*,

2011 WL 2976839, at *13 (observing that several plaintiffs failed to allege "that they reviewed

[defendant's] website before purchasing [defendant's products]").  Moreover, plaintiff fails to

establish a causal link because the video advertisement that he describes is about a different

product.  *See supra* at 5-6; 9-10.  Indeed, the representations about SilverStar® ULTRA are

different from the representations on the package of the regular SilverStar® headlights that

plaintiff purchased.  *See* Am. Compl. ¶ 27 (stating that bulbs in the SilverStar® ULTRA product

family are "UP TO 50%" brighter, provide for "UP TO 40%" better visibility, and "UP TO 50%"

wider visibility when "[r]eplacing worn standard bulbs . . . .").  Plaintiff fails to explain how

these representations, about a different product, were causally linked to his purported loss.  He

simply relies on assumptions and legal conclusions and "fail[s] to allege when statements were

made or when [he was] exposed to the statements."  *Torres-Hernandez*, 2008 WL 5381227, at

*7.  Because plaintiff has failed to establish a causal link between the alleged misrepresentations

and his purported loss, his CFA claim based on the video advertisement must be dismissed.

## II.     Plaintiff Fails To State A Claim For Unjust Enrichment Because He Purchased The Headlights From A Third-Party Retailer.

Plaintiff fails to state a claim for unjust enrichment because he does not claim he enriched

Sylvania.  Instead, he squarely alleges that he bought the headlights from Walmart.  *See* Am.

Compl. ¶ 29.  That point is critical, for as this Court has recognized, "[t]o support an unjust

enrichment claim, there must be a ***direct relationship*** between the parties or there 'must be a

mistake on the part of the person conferring the benefit.'"  *Hughes*, 2011 WL 2976839, at *27.

Where, as here, "a plaintiff purchases a product from a third party retailer, rather than the

defendant, then no direct relationship exists" to support a claim of unjust enrichment.  *Id.*; *see

also Laney v. Am. Standard Cos., Inc.*, Civ. No. 07-3991 (PGS), 2010 WL 3810637, at *12

(D.N.J. Sept. 23, 2010) (dismissing unjust enrichment claim where plaintiff purchased toilets

from Home Depot instead of defendant manufacturer); *Cooper v. Samsung Elecs. Am., Inc.*, Civ.

No. 07-3853 (JLL), 2008 WL 4513924, at *10 (D.N.J. Sept. 30, 2008), *aff'd*, 374 F. App'x 250

(3d. Cir 2010) (dismissing unjust enrichment claim where the plaintiff purchased a television

from a third-party retailer and therefore "did not confer a benefit on [defendant] within the

meaning of New Jersey's doctrine of unjust enrichment"); *Maniscalco v. Brother Int'l Corp.

(USA)*, 627 F. Supp. 2d 494, 505-06 (D.N.J. 2009) (holding that because plaintiff "fail[ed] to

allege that he conferred a benefit directly upon [defendant], [plaintiff's] pleading does not

sufficiently allege the elements of [unjust enrichment]").

Any effort by plaintiff to extend an unjust enrichment claim to Sylvania misconstrues the

nature of unjust enrichment, which is a quasi-contractual remedy that lies where a plaintiff

conferred a benefit on the defendant beyond its contractual rights and expected to receive

payment.  "New Jersey law does not recognize unjust enrichment as an independent tort cause of

action. . . .   Rather, 'unjust enrichment . . . requires that plaintiff show that it expected

remuneration from the defendant at the time it performed or conferred a benefit on defendant.'"

*Torres-Hernandez*, 2008 WL 5381227, at *9 (quoting *VRG Corp. v. GKN Realty Corp.*, 641

A.2d 519, 526 (N.J. 1994)) (alteration in original).  Because plaintiff fails to allege that he

"'expected remuneration from [Sylvania] at the time [he] performed or conferred a benefit on [it]

and that the failure of remuneration enriched [Sylvania] beyond its contractual rights,'" his claim

for unjust enrichment fails.  *Hughes*, 2011 WL 2976839, at *26-27 (quoting *VRG Corp.*, 641 A.2d at 526) (holding that purchasers failed to state a claim of unjust enrichment because they did not allege "any facts indicating that they expected remuneration from [defendant] at the time of purchase, or that [defendant]'s failure to remunerate enriched [defendant] beyond its contractual rights").

Since the filing of his original complaint plaintiff has not done, and indeed cannot do, anything to remedy the defect in his unjust enrichment claim.  His insistence on pressing such a claim, even after being made aware of the law squarely rejecting it, is frivolous.

### III.    Plaintiff Does Not Provide Specific Facts To Support An Inference That Sylvania Knowingly Made A Material Misrepresentation.

Plaintiff's common law fraud claim fails for reasons similar to the flaws in his CFA claim.  "'The five elements of fraud are: (1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages.'"  *McKenna v. Bank of Am.*, Civ. No. 10-1848 (JAP), 2010 WL 2985643, at *2 (D.N.J. July 26, 2010) (quoting *Gennari v. Weichert Co. Realtors*, 691 A.2d 350, 367 (N.J. 1997)). Plaintiff's common law fraud claim must also comport with the strictures of Rule 9(b) of the Federal Rules of Civil Procedure.  *See Torres-Hernandez*, 2008 WL 5381227, at *7-8 (applying Rule 9(b) to a claim of misrepresentation).

Plaintiff's first, and most glaring, shortcoming is his failure sufficiently to allege a material misrepresentation.   As explained above, the SilverStar® packaging discloses comparison information, disclaimers regarding its basis for comparison, as well as the scientific basis for its brightness measurements.  *See supra* at 11-13.  Plaintiff offers nothing to support an inference that those representations are otherwise incorrect or misleading, aside from his

18

conclusory and unsupported generalized statement that defendants represented that "its SilverStar® head lamps were of a particular quality, when those head lamps were not of that quality and where Sylvania had no substantiating scientific evidence of its claims." Am. Compl. ¶ 65. As such, "[p]laintiff's allegations 'suffers from the precise problems that Rule 9(b) aims to prevent,' that is failing to give the defendant appropriate notice of the claims alleged against him and the specific fraudulent acts underlying the plaintiff's pleadings." *Torres-Hernandez*, 2008 WL 5381227, at *8. Plaintiff's assertion on this point is thus the epitome of a "[t]hreadbare recital[] of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 555).

Common law fraud also requires a showing of reliance, which presents another problem for plaintiff: the reliance must be reasonable. *See McKenna*, 2010 WL 2985643, at *2 (citing *Gennari*, 691 A.2d at 367). Because the packaging and Sylvania's website included specific bases for comparison, *see* Am. Compl. Ex. A & ¶ 27, plaintiff fails to state a claim of reasonable reliance to the extent that he interpreted the representations on the packaging or in the video advertisement to mean anything different than what they actually say. And, putting aside the fact that the video advertisement was not for the product plaintiff purchased, plaintiff does not even allege that he saw it, when, or how. Put simply, plaintiff fails to plead "the date, time and place" of this claim "or otherwise inject precision or some measure of substantiation into" his allegation of reliance. *Frederico*, 507 F.3d at 200 (citing *Lum*, 361 F.3d at 224).

IV.   **Plaintiff Fails To State A Claim Of Negligent Misrepresentation Because He Does Not Sufficiently Allege That He Reasonably Relied On An Incorrect Statement.**

Plaintiff alternatively seeks relief on the ground of negligent misrepresentation. But this claim fails for reasons similar to the problems afflicting his CFA and common law fraud claims. "[T]o state a claim for negligent misrepresentation under New Jersey law, a plaintiff must allege:

(1) an incorrect statement, (2) negligently made, (3) upon which plaintiff justifiably relied, and (4) resulted in economic loss or injury as a consequence of that reliance." *Mason*, 774 F. Supp. 2d at 704. Plaintiff's vague contention that Sylvania represented that its "SilverStar® head lamps were of a particular quality, when those head lamps were not of that quality and where Sylvania had no substantiating scientific evidence of the claims," Am. Compl. ¶ 73, is not supported in the amended complaint with any factual specifics. "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949-50.

Plaintiff's amended complaint also fails to establish the element of reliance. "'The actual receipt and consideration of any misstatement remains central to the case of any plaintiff seeking to prove that he or she was deceived by the misstatement or omission. The element of reliance is the same for fraud and negligent misrepresentation.'" *McKenna*, 2010 WL 2985643, at *2 (quoting *Kaufman v. i-Stat Corp.*, 754 A.2d 1188 (N.J. 2000)). As with his common law fraud claim, plaintiff pleads reliance in only the most general of terms. He simply states that he "relied upon Sylvania's representations and, in reliance on them, purchased such head lamps." Am. Compl. ¶ 76. He provides no specifics about "[t]he actual receipt" of the representations. *McKenna*, 2010 WL 2985643, at *2. He does not give any facts, for example, about the video advertisement: if he saw it, when he saw it, or how he relied on it despite its marketing of a different product family. Aside from the product packaging, he similarly fails to plead that he relied on any of the other materials he attaches to the amended complaint. Because plaintiff's amended complaint is devoid of these facts, which are "central" to this cause of action, *McKenn*a, 2010 WL 2985643, at *2, he does not state a claim for negligent misrepresentation.

Nor does plaintiff plead a basis for reasonable reliance with respect to the product packaging.  As his amended complaint establishes, plaintiff supposedly relied on an interpretation of the packaging that distorts what the packaging actually says.  Such reliance is hardly "reasonable."

**V.   Plaintiff Does Not Identify An Express Warranty, Nor Any Inference That Sylvania Breached.**

Plaintiff alleges that Sylvania breached an express warranty, but his allegations about this cause of action fall short.  To state a claim for breach of an express warranty under New Jersey law, a plaintiff "must allege (1) a contract between the parties; (2) a breach of that contract; (3) damages flowing therefrom; and (4) that the party stating the claim performed its own contractual obligations."  *Frederico*, 507 F.3d at 203.  New Jersey law provides that a seller creates an express warranty through "(a) [a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain" or "(b) [a]ny description of the goods which is made part of the basis of the bargain."  N.J. Stat. Ann. § 12A:2-313(1)(a)-(b).  But "an affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty."  *Id.* at § 12A:2-313(2).

There was no contract between Sylvania and the plaintiff.  Moreover, plaintiff does not sufficiently plead how the affirmations on the packaging became the "basis of the bargain."  *See Hughes*, 2011 WL 2976839, at *21.  In all events, plaintiff's claim seems to rest on the notion that Sylvania created an express warranty through affirmations of fact.  *See In re Toshiba*, 2009 WL 2940081, at *15.  But the representations plaintiff cites were insufficient to create an express warranty.  They do not, for example, guarantee or warrant that the headlights will be a certain percentage brighter than regular halogens.  Instead, they state that SilverStar® headlights may shine "up to" stated percentages brighter, wider, or farther than worn standard bulbs, noting that

"[a]ctual performance may vary by product type, vehicle model and usage."  Am. Compl. Ex. A.
These representations simply state that the headlights may reach a certain relative brightness
compared to worn bulbs, and emphasize that the performance of the product might vary—hardly
the kind of promise that would create an express warranty under the statute.  *See In re Toshiba*,
2009 WL 2940081, at *15. ("[A]n affirmation merely of the value of the goods or a statement
purporting to be merely the seller's opinion or commendation of the goods does not create a
warranty.").

### VI.    Plaintiff Is Not Entitled To Declaratory And Injunctive Relief.

Plaintiff's claim for declaratory and injunctive relief fails because he does not afford
notice of the specific grounds on which this claim rests.  Plaintiff simply states that "Sylvania's
practices described herein are unlawful and against public policy."  Am. Compl. ¶ 90.  This
Court dismissed a similarly vague plea for declaratory relief in *Glauberzon v. Pella Corporation*
after it determined that the plaintiff "fail[ed] to provide [the defendant] with proper notice of the
specific grounds upon which" she sought such relief.  Civ. No. 10-5929 (JLL), 2011 WL
1337509, at *15 (D.N.J. Apr. 7, 2011).  Plaintiff's contention here fails for the same reason.

Moreover, the granting of declaratory and injunctive relief is dependent on plaintiff's
other causes of action and whether the Court allows those to move forward.  *See DiCarlo v. St.
Mary Hosp.*, 530 F.3d 255, 269 (3d Cir. 2008).  Because plaintiff has failed to state a claim under
each of his other respective causes of action, this Court should deny his request for declaratory
and injunctive relief.  *See*, *e.g.*, *id.* ("Because Plaintiff has failed to make any claims that would
entitle him to relief, the requests for declaratory and injunctive relief will be denied.").

**CONCLUSION**

For the foregoing reasons, Sylvania respectfully requests that this Court enter an order dismissing the amended complaint in its entirety for failure to state a claim.  Sylvania further requests that plaintiff's amended complaint be dismissed with prejudice.  Plaintiff has already had an opportunity to amend after reviewing defendant's recitation of the complaint's defects.  Plaintiff's "own allegations throughout this suit . . . will make it impossible . . . to assert a cognizable claim[,]" and further "amending the complaint would be futile."  *Walzer v. Muriel Siebert & Co.*, Civ. No. 04-5672 (DRD), 2010 WL 3174458, at *8-10 (D.N.J. Aug. 10, 2010) (dismissing claims in plaintiff's original complaint with prejudice because "[t]he allegations [were] insufficient to state a cognizable claim for relief," as they were "almost entirely [made up] of legal conclusions couched as factual allegations" and because plaintiff did not adequately plead all elements of his claims) (citing *In re Burlington Coat Factory*, 114 F.3d at 1434).

Dated:  February 13, 2012                    Respectfully submitted,

                                             /s/ Stephen M. Orlofsky

Brant W. Bishop, P.C. (*pro hac vice*)       Stephen M. Orlofsky
Eunnice H. Eun (*pro hac vice*)              David C. Kistler
KIRKLAND & ELLIS LLP                         New Jersey Resident Partners
655 Fifteenth Street, N.W.                   BLANK ROME LLP
Washington, D.C.  20005                      301 Carnegie Center, 3d Floor
Phone: (202) 879-5000                        Princeton, N.J. 08540
Brant.Bishop@kirkland.com                    Telephone: (609) 750-7700
Eunnice.Eun@kirkland.com                     Orlofsky@blankrome.com
                                             Kistler@blankrome.com

*Counsel for Defendants*
*OSRAM SYLVANIA, INC. and*
*OSRAM SYLVANIA PRODUCTS, INC.*

24