<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| IMRAN CHAUDHRI, individually, and on behalf of all others similarly situated,<br><br>Plaintiff,<br>v.<br><br>OSRAM SYLVANIA, INC., and OSRAM SYLVANIA PRODUCTS, INC.,<br><br>Defendants. | Civil Action No. 2:11-cv-05504 (SDW) (MCA)<br><br><br>**OPINION**<br><br><br>June 14, 2012 |

**WIGENTON**, District Judge.

Before this Court is Defendants Osram Sylvania, Inc. and Osram Sylvania Products, Inc.'s (collectively "Sylvania") motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). This Court has jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d). Venue is proper, pursuant to 28 U.S.C. § 1391(a). This Court, having considered the parties' submissions, decides the motion without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons stated below, this Court **DENIES** in part and **GRANTS** in part Defendants' motion.

I.  **FACTS**

"Defendant Sylvania is the North American business of OSRAM GmbH of Germany." (Am. Compl. ¶ 7.) OSRAM is "one of the world's largest manufacturers and [is] part of the Siemens family of companies." (*Id.*) Sylvania is a Delaware corporation with its principle place of business in Danvers, Massachusetts; however, it conducts business throughout the United States, including in New Jersey. (*See id.*) Part of Sylvania's business in the United States involves the manufacture and sale of automotive lighting products, which are sold through retailers. (*See id.* at ¶¶ 9, 12.) These

lighting products include the SilverStar® product line, which includes the 9004 SilverStar® head lamp. (*See id.* at ¶ 9.)

The front of the packaging for the 9004 SilverStar® head lamp contains three symbols ("Symbols") that suggest the lamps will provide "UP TO 35%" more brightness, "UP TO 30%" greater down road visibility, and "UP TO 35%" greater side road visibility. (*Id.* Ex. A, at 1.) Each Symbol contains an asterisk that corresponds to an asterisk next to a short statement in the lower right-hand corner of the packaging. (*See id.*) The statement notes that "[r]eplacing worn standard bulbs provides" the effects advertised on the boxes. (*Id.*)

The back of the packaging for the 9004 SilverStar® head lamp contains a diagram ("Comparison Chart") comparing the SilverStar® line of headlamps to four other types of head lamps in the areas of brightness, down road visibility, and side road visibility. (*See id.* at 2.) The SilverStar® category contains more bars in each area of the Comparison Chart than the standard halogen head lamp ("Standard Lamp") category. (*See id.*) In the brightness area, the SilverStar® category contains a small cross. (*See id.*) The cross corresponds to a cross below the Comparison Chart, next to which there is a statement written in small print. (*See id.*) The statement notes that the brightness comparison is "based on coil luminance measurements." (*See id.*) In each area of comparison, the SilverStar® category contains an asterisk. (*See id.*) The asterisks correspond to another asterisk below the Comparison Chart, next to which there is a series of statements written in small print. (*See* Am. Compl., Ex. A, at 2.) The statements note that: (1) "[h]eadlamps dim over time by 20% or more and timely replacement results in increased lighting performance," (2) the diagram's claims are "based on measured comparisons between SilverStar product family at 100% light output and standard halogen bulbs at 80% output," and (3) "[a]ctual performance may vary by product type, vehicle model and usage." (*Id.*) Underneath several lines of French and Spanish, the

2

packaging also notes that "[b]ulbs with greater brightness may require replacement at more frequent intervals." (*Id.*) Finally, near the bottom of the packaging, the Sylvania website is listed. (*See id.*)

On March 11, 2009, Plaintiff Imran Chaudhri, a resident of Piscataway, New Jersey, "purchased one package [containing] two Sylvania 9004 Silverstar® lamps from [a] Walmart in Piscataway." (*Id.* at ¶¶ 6, 29.) He paid $37.63, not including taxes, for the lamps. (*See id.* at ¶ 29.) Plaintiff alleges that Sylvania specifically designed its head lamp packaging to appeal to consumers seeking to base their head lamp purchases on comparisons between competing products. (*See id.* at ¶ 13.) To that end, Plaintiff alleges that he based his own purchase on the packaging's Symbols and Comparison Chart. (*See id.* at ¶ 29.)

Plaintiff implies that the Symbols led him to believe that the 9004 SilverStar® lamps are superior to Standard Lamps, because the front of the packaging fails to explain how the "UP TO" comparisons were derived. (*See id.* at ¶ 14.) Plaintiff alleges that the Comparison Chart also led consumers to believe that SilverStar® lamps are superior to Standard Lamps, because the Chart's failure to describe what a bar quantifies leads the average consumer to the view individual bars as equivalent metrics. (*See id.* at ¶ 15.) That is to say that where SilverStar® lamps have four bars or three bars and Standard Lamps have one, the average consumer would reasonably believe that SilverStar® lamps are four times or three times greater in that area of comparison. As a result, Plaintiff alleges that it is reasonable to interpret the Chart's brightness comparison as stating that SilverStar® lamps are four times brighter than Standard Lamps and that the side road and down road visibility are respectively four and three times better than with Standard Lamps. (*See id.*) Plaintiff alleges that, consequently, the packaging led him to the overall impression that "SilverStar® lamps are significantly brighter, provide significantly wider,[sic] side road visibility, and provide significantly farther,[sic] down road visibility when compared to standard halogen headlights." (*Id.* at ¶ 16.)

3

Plaintiff further contends that the package's "representations are without scientific support[1] and are otherwise misleading." (*Id.* at ¶ 18.) Plaintiff alleges that the package's disclaimer that "it is comparing its SilverStar® product at 100% light output and standard halogen head lamps at 80% light output" is misleading and "not prominent enough to avoid the overall misleading impression." (*Id.* at ¶ 17.) Additionally, Plaintiff asserts that the statement that "head lamps dim over time by 20% or more" is misleading, because according to Plaintiff, "standard halogen head lamps maintain their light output over their lifespan." (*Id.* at ¶ 21.) Plaintiff further contends that the brightness comparison is misleading because the published technical specifications available on the Sylvania website show that Sylvania standard lamps and 9004 Sylvania SilverStar® lamps have "the exact same light output – exactly 700 lumens for low beam and 1200 lumens for high beam with a +/- 15% margin of error." (*Id.* at ¶ 19.) According to Plaintiff, if he "had known that the SilverStar head lamps were not noticeably brighter and he could not see noticeably further than [with] standard halogen head lamps, he would not have purchased them." (*Id.* at ¶ 36.)

Plaintiff also asserts that the disclaimer on the back of the packaging that "[b]ulbs with greater brightness may require replacement at more frequent intervals" is misleading because it "fails to disclose to the consumer that the SilverStar product family will **always** have a significantly reduced product life span when compared to regular halogen head lamps." (*Id.* at ¶ 24.) According to Plaintiff, "[t]he amethyst colored coating on the SilverStar[®] head lamp glass,[sic] traps heat inside the capsule, causing the filament to burn out more quickly, thus decreasing the life." (*Id.* at ¶ 22.) Plaintiff alleges that SilverStar® lamps will generally last between six months and one year, while Standard Lamps will generally last for several years. (*See id.* at ¶ 23.) Furthermore, Plaintiff claims that Sylvania has admitted that SilverStar® lamps have a significantly shorter life span than standard lamps. (*See id.* at ¶ 25) (*citing id.* Ex. D). Plaintiff specifically refers to the packaging for

---

[1] Plaintiff's arguments regarding scientific inaccuracy are not relevant for purposes of deciding this motion.

Defendants' Xtra Vision head lamps, which contain a comparison chart with a "life" area of comparison, in which the SilverStar® category contains fewer bars than the standard lamp category. (*See id.*, Ex. D).

Plaintiff also alleges that his personal experience with the SilverStar® lamps did not meet the expectations induced by the packaging, as he "did not perceive any significant difference between the 9004 SilverStar® head lamps and his former head lamps." (*Id.* at ¶ 30.) Specifically, Plaintiff contends that one of the 9004 SilverStar® lamps burned out less than four months after installation. (*See id.* at ¶ 31.) Plaintiff alleges that after purchasing a pair of Sylvania standard lamps at Walmart for $17 and installing one of them to replace the 9004 SilverStar® lamp that had burned out, he "did not perceive any significant difference between" the 9004 SilverStar® lamp and the newly installed Sylvania standard lamp. (*Id.* at ¶¶ 31-32.) Plaintiff also alleges that the remaining 9004 SilverStar® lamp burned out less than a month later. (*See id.* at ¶ 33.) Plaintiff allegedly replaced that one with a second standard lamp, and he claims that both Standard Lamps were still operational at the time the complaint was written. (*See id.*) Ultimately, Plaintiff alleges that when he purchased the 9004 SilverStar® lamps he was unaware that they would have a shorter lifespan than standard lamps. (*See id.* at ¶ 34.) Plaintiff alleges that he would not have purchased the 9004 SilverStar® lamps if he had been aware of their inferior lifespan. (*See id.* at ¶ 35.)

## II.   PROCEDURAL HISTORY

On September 22, 2011, Plaintiff filed a complaint against Defendants. (*See* dkt. no. 1.) On December 5, 2011, Defendants filed a motion to dismiss the complaint. (dkt. no. 7-1.) On January 3, 2012, the parties stipulated that Plaintiff may file an amended complaint. (*See* dkt. no. 10.) On January 9, 2012, Plaintiff filed an amended complaint, seeking class certification and presenting six causes of action, including claims for: (1) violation of the New Jersey Consumer Fraud Act

("NJCFA"); (2) unjust enrichment; (3) common law fraud; (4) negligent misrepresentation; (5) breach of express warranty; and (6) declaratory and injunctive relief. (*See* dkt. no. 11.) On February 13, 2012, Defendants filed the instant motion to dismiss plaintiff's amended complaint. (*See* dkt. no. 14-1.)

### III. STANDARD

The adequacy of pleadings is governed by Federal Rule of Civil Procedure 8(a)(2), which requires that a complaint allege "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). This Rule "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted); See *Phillips v. County of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008) (Rule 8 "requires a 'showing' rather than a blanket assertion of an entitlement to relief." (citation omitted)). In considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must "'accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'" *Phillips*, 515 F.3d at 231 (quoting *Pinker v. Roche Holdings Ltd.,* 292 F.3d 361, 374 n.7 (3d Cir. 2002)). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 555). As the Supreme Court has explained:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for

6

> more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'

*Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 556-57) (internal citations omitted).

Determining whether the allegations in a complaint are "plausible" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 129 S. Ct. at 1950 (citation omitted). If the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," *id.,* the complaint should be dismissed for failing to "show[] that the pleader is entitled to relief" as required by Rule 8(a)(2). *Id.*

As a general rule, a district court deciding a motion to dismiss may consider only the contents of the pleadings. *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002) (internal citation omitted). However, there exists an exception to that general rule in that "'[d]ocuments that the defendant attaches to the motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to the claim.'" *Cooper v. Samsung Electronics Am., Inc.,* 374 F. App'x 250, 253 n.3 (3d Cir. Mar. 30, 2010) (quoting *Pryor*, 288 F.3d at 560).

IV. **DISCUSSION**

    a. NJCFA

To bring a claim under the NJCFA a plaintiff must allege the following three elements: "(1) unlawful conduct by the defendants; (2) an ascertainable loss on the part of the plaintiff; and (3) a causal relationship between the defendants' unlawful conduct and the plaintiff's ascertainable loss." *N.J. Citizen Action v. Schering-Plough Corp.*, 367 N.J. Super. 8, 12-13 (App. Div. 2003), *cert. denied*, 178 N.J. 249 (2003) (internal citation omitted). Defendants argue that Plaintiff's NJCFA claim is deficient because Plaintiff fails to plead elements one and three.

        i. *Unlawful Conduct*

Conduct that is prohibited as unlawful under the NJCFA includes:

> [t]he act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby....

N.J. STAT. ANN. § 56:8-2 (West 2012). Under the NJCFA, there are three categories of unlawful conduct: "(1) affirmative acts [i.e., misrepresentations]; (2) knowing omissions; and (3) regulatory violations." *Solo v. Bed Bath & Beyond, Inc.*, No. 06-1908, 2007 WL 1237825, at *2 (D.N.J. Apr. 26, 2007) (*citing Cox v. Sears Roebuck & Co.*, 138 N.J. 2, 17 (1994)). It is important to note that the unlawful conduct must be made "'in connection' with the sale or advertisement of a product or service." *Arcand v. Brothers Int'l Corp.*, 673 F. Supp. 2d 282, 296-97 (D.N.J. 2009) (*quoting Castro v. NYT Television*, 370 N.J. Super. 282, 294 (App. Div. 2004)). It is also important to note that a plaintiff need not establish reliance on a misrepresentation in order to establish NJCFA liability; rather, the NJCFA establishes prohibited conduct as actionable even if no plaintiff "has in fact been misled, deceived, or damaged thereby." § 56:8-2 (West); *See Union Ink Co. v. AT&T Wireless*, 352 N.J. Super. 617, 646 (App. Div. 2002).

There are differences regarding the burden of proof for each type of unlawful conduct. For purposes of this action, only affirmative acts and omissions need to be addressed. "When the alleged consumer-fraud violation consists of an affirmative act, intent is not an essential element and the plaintiff need not prove that the defendant intended to commit an unlawful act." *Cox*, 138 N.J. at 17-18 (internal citation omitted). Contrarily, "when the alleged consumer fraud consists of an omission, the plaintiff must show that the defendant acted with knowledge, and intent is an essential element of the fraud." *Cox*, 138 N.J. at 18 (internal citation omitted).

Defendants argue that Plaintiff has failed to successfully plead affirmative misrepresentations and knowing omissions.

1. Affirmative Misrepresentation

Defendants contend that Plaintiff's reliance on a video advertisement for SilverStar® Ultra headlights as an affirmative misrepresentation is misplaced as said headlights are part of a different product line than the headlamps that are the basis of Plaintiff's claims. (*See* Defs.' Br. 9.) Plaintiff, however, clarifies in his opposition that his reference to the video advertisement in the amended complaint is "to show a pattern and practice on behalf of the Defendants to mislead consumers about the true nature of the SilverStar[®] line of head lamps, including SilverStar[®] Ultra." (Pl.'s Br. 20.)

Defendants also argue that Plaintiff failed to successfully plead that Defendants' use of the Comparison Chart was an affirmative misrepresentation. Plaintiff contends that there is no description on the packaging as to the equivalence of the bars on the Chart. (*See id.*) Plaintiff alleges that as a result, it is reasonable for the average consumer to interpret the bars as stating that the SilverStar® lamp is four times brighter than standard halogen head lamps, has three times down road visibility, and four times side road visibility. (*See id.*) Defendants contend that Plaintiff's allegation is faulty because the front of the SilverStar® package provides a numerical comparison and includes the words "UP TO." (*See* Defs.' Br. 11.) Defendants also argue that Plaintiff's allegation attempts to change the plain meaning of the words "UP TO" because the average consumer understands those words to mean that there is a possibility that the claimed performance may be less than advertised, and not exactly as advertised. (Defs.' Reply Br. 6) (citing *Fink v. Time Warner Cable*, No. 08-9628 (LTS), 2011 WL 6747463, at * 4 (S.D.N.Y. Dec. 23, 2011).

Since Defendants' arguments discuss the factual inconsistencies and reasonableness of Plaintiff's claim, they are ineffective and misplaced. (*See id.*) They go to the merits of Plaintiff's claim instead of the adequacy of the pleadings. (*See id.*) Therefore, Defendants' arguments fail.

2. Knowing Omissions

The NJCFA describes a knowing omission as "the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission." N.J. STAT. ANN. § 56:8-2 (West 2012). "[B]y the express terms of *N.J.S.A.* 56:8-2, an essential element of a consumer fraud consisting of an act of omission is that a defendant's act be 'knowing.'" *Id.* at 598 (internal citations omitted). "[T]he heightened pleading standard of Rule 9(b) allows essential elements of the omission under the NJCFA, such as intent, to be alleged generally." *Maniscolo, v. Brothers Int'l Corp. (USA)*, 627 F.Supp.2d 494, 500 (D.N.J. 2009) (internal citations omitted).

In general, Defendants argue that Plaintiff fails to sufficiently allege that Sylvania "knowingly omitted information from its packaging or advertising ***intending*** to mislead plaintiff." (*See* Defs.' Br. 13.) Specifically, Defendants argue that both the front and back of its packaging for the 9004 SilverStar® head lamp disclose the information relevant to the representations thereon, and that some of the representations are sufficiently qualified through the use of the words "up to." (*See id.*)

Concerning the front of the packaging, Defendants contend that Plaintiff's allegation that there is no basis for the representations that correspond to the Symbols is deficient because it is directly contradicted by the asterisks accompanying the figures, which denote that the claimed advantages of the SilverStar® head lamps are based on replacing worn Standard Lamps with new SilverStar® bulbs. (*See id.*) As to the back of the packaging, Defendants argue two things. First, Defendants contend that the Comparison Chart's brightness comparison corresponds to a disclaimer that adequately explains the basis for the Chart's assessments. (*See id.* at 14.) Second, Defendants

10

contend that the statement that "'[b]ulbs with greater brightness may require replacement at more frequent intervals,'" amounts to a disclosure that SilverStar® lamps have a relatively shorter lifespan than Standard Lamps. (*See* Defs. Br. 14-15.)

Defendants' arguments are not sufficient to warrant dismissal. As stated above, Plaintiff need only make a general allegation that the essential elements of a knowing omission occurred. *See Maniscolo*, 627 F. Supp. 2d at 500 (internal citations omitted). In *Maniscalco*, the Court found a rather general "knowing omission" allegation sufficient to withstand a motion to dismiss. The allegation accused defendants of "[m]arketing, advertising, and selling machines *that they know* are likely to fail . . . *while intentionally concealing and failing to disclose* information to prospective purchasers." *Maniscalco*, 627 F. Supp. 2d at 500. In the instant case, Plaintiff alleges that Sylvania's conduct included "the knowing concealment . . . of material facts related to head lamp brightness, head lamp beam width, the ability to see further, and head lamp life." (Am. Compl. ¶ 51.) Plaintiff further alleges that Sylvania "omitted material facts with the intent that Plaintiff and Class members rely upon such concealment." (*Id.* ¶ 49.) Alongside Plaintiff's more specific allegations regarding the product's advertised standards and actual performance, Plaintiff's general allegations of knowing omission are sufficiently pled.

    ii. *Causation*

Defendants' causation argument is premised on its mistaken understanding that Plaintiff based his claims in part on a video advertisement. (*See id.* at 15.) Because Plaintiff clarifies that he does not premise his claims on said video, (*see* Pl.'s Reply Br. 20), Defendants' causation argument is moot.

   b. Unjust Enrichment

Under New Jersey law, a claim for unjust enrichment requires a plaintiff to allege that "(1) at plaintiff's expense (2) defendant received benefit (3) under circumstances that would make it unjust

11

for defendant to retain benefit without paying for it." *In re K-Dur Antitrust Litig.*, 338 F. Supp. 2d 517, 544 (D.N.J. 2004). A plaintiff must also allege a sufficiently direct relationship with the defendant to support an unjust enrichment claim. *See Nelson v. Xacta 3000 Inc.*, No. 08-5426, 2009 WL 4119176, at *7 (D.N.J. Nov. 24, 2009) (holding that plaintiff's unjust enrichment claims fail because he purchased the product from a third-party vendor, not from defendant); *Cooper v. Samsung Elec. Am., Inc.*, No. 07-3853, 2008 WL 4513924, at *10 (D.N.J. Sept. 30, 2008) ("[A]lthough [plaintiff] alleges that Samsung was unjustly enriched through the purchase of the television, there was no relationship conferring any direct benefit on Samsung through [plaintiff's] purchase, as the purchase was through a retailer[.]"); *Maniscalco*, 627 F. Supp. 2d at 505-06 (dismissing unjust enrichment claims where plaintiffs conceded that they purchased printers from third-party retail chain).

Defendants argue that Plaintiff's unjust enrichment claim cannot stand because Plaintiff purchased the head lights from a retailer and not directly from Defendants. (*See* Defs.' Br. 16-17.) Defendants' argument is on point. Plaintiff rebuts Defendants' argument by relying on *Lee v. Carter-Reed Co., L.L.C.*, 203 N.J. 496 (2010), which Plaintiff contends supports the application of an unjust enrichment claim in the context of goods being bought from a retailer. (*See* Pl.'s Br. 21-22.) However, Plaintiff's reliance on *Lee* is misplaced as the New Jersey Supreme Court in that case did not rule that an unjust enrichment claim does not require a direct relationship between a plaintiff and defendant. Instead, the New Jersey Supreme Court simply vacated the denial of class certification for the unjust enrichment claim, among other claims, and remanded the issue to the trial court. As such, Plaintiff's argument does not cure its pleading deficiency.

   c. <u>Common Law Fraud</u>

Federal Rule of Civil Procedure 9(b) requires that fraud be pled with particularity. *See* FED. R. CIV. P. 9. "The [] elements of common-law fraud are: (1) a material misrepresentation of a

12

presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." *Gennari v. Weichert Co. Realtors*, 148 N.J. 582, 610 (1997).

Defendants contend that Plaintiff's common law fraud claim is deficient in alleging elements one and four. First, Defendants argue that Plaintiff has failed to allege a material misrepresentation. (*See* Defs.' Br. 18.) Defendants specifically argue that Plaintiff fails to satisfy the first element of his claim because the SilverStar® packaging contains information regarding new light comparison, disclaimers regarding the basis for comparison, and the scientific basis for the brightness measurements. (*See id.*) Defendants further contend that Plaitiff's allegations do not allow for an inference that Defendants' representations are misleading. (*See* Defs.' Br. 18-19.) Defendants assert that Plaintiff's allegations merely offer a "conclusory and unsupported generalized statement that defendants represented that" "its SilverStar® head lamps were of a particular quality, when those head lamps were not of that quality and where Sylvania had no substantiating scientific evidence of its claims." (Defs. Br. 18-19; First Am. Compl. ¶ 65.) Plaintiff contends that he does allege a material misrepresentation in his complaint as he alleged that (1) Defendants misrepresented the performance characteristics of SilverStar® head lights and (2) Defendants intentionally omitted information from the product packaging regarding the product's performance. (*See* Pl.'s Br. 22-23.) By relying on the fact that the packaging contains comparison information and disclaimers about the comparisons and information given, Defendants' first argument is misplaced because it does not address the adequacy of Plaintiff's allegations and implies that Plaintiff's allegations are factually inconsistent. Defendants' additional argument regarding Plaintiff's allegation pertaining to misrepresentations about product quality is premature as discovery may reveal whether Defendants' products were not of the quality that Defendants advertised.

13

Second Defendants argue that Plaintiff's fraud claim is deficient because he fails to allege a reasonable reliance on the material misrepresentation. (*See* Defs.' Br. 19.) Defendants specifically argue that "because the packaging and Sylvania's website included specific bases for comparison" (Defs.' Br. 19.), Plaintiff fails to satisfy the reasonable reliance element of a fraud claim. Defendants' argument again seems to imply that the mere existence of certain information makes Plaintiff's allegation a factual impossibility. (*See* Defs.' Br. 20-21.) As such, Defendants' argument is misplaced. Moreover, accepting Plaintiff's factual allegation as true, and construing the complaint in the light most favorable to the Plaintiff, *see Phillips*, 515 F.3d at 232, if Plaintiff believed that the allegedly misrepresented performance characteristics concerning Defendants' products were true, he would have been reasonable in relying on said representations in making his purchase.

Accordingly, Defendants' argument regarding Plaintiff's common law fraud claim are unavailing.

      d. <u>Negligent Misrepresentation</u>

Defendants' arguments for dismissing Plaintiff's negligent misrepresentation claim are similar to their arguments for dismissing Plaintiff's common law fraud claim. (*See* Defs.' Br. 19-21.) Therefore, to the extent that Defendants' arguments concerning Plaintiff's negligent misrepresentation claim are similar to their arguments concerning common law fraud, they are ineffective for the same reasons set forth above.

Defendants also attack Plaintiff's negligent misrepresentation claim on the basis that Plaintiff fails to establish "[t]he actual receipt and consideration of any misstatement," which is central to Plaintiff's claim. *McKenna v. Bank of America*, No. 10-1848, 2010 WL 2985643, at * 2 (D.N.J. July 26, 2010), (*see* Defs.' Br. 20) (citing *McKenna*). Defendants' reliance on *McKenna* is misplaced as that case involved a Plaintiff who could not show that he did not receive and consider

the appraisal underlying his fraudulent and negligent misrepresentation claims prior to purchasing a property. *See id.* at 3. Here, Plaintiff's allegations implicitly assert that he received the alleged misstatements as he purchased the headlights, and thereby possessed the product packaging, and explicitly assert that he considered the alleged misstatements in making his purchase. (*See generally* Am. Compl.) Therefore, Defendants' argument is without merit.

    e.  Breach of Express Warranty

To state a claim for breach of express warranty under New Jersey law, Plaintiff must allege "(1) that Defendant made an affirmation, promise or description about the product; (2) that this affirmation, promise or description became part of the basis of the bargain for the product; and (3) that the product ultimately did not conform to the affirmation, promise or description." *McDonough v. Bayer Healthcare, LLC*, No. 10-422, 2011 WL 2119107, at *4 (D.N.J. May 26, 2011) (internal citations omitted). "It is not necessary to the creation of an express warranty that the seller use formal words such as 'warrant' or 'guarantee' or that he have a specific intention to make a warranty." N.J. STAT. ANN. § 12A:2-313(2) (West 2012). Defendants advance four arguments in favor of dismissing Plaintiff's breach of express warranty claim.

First, Defendants argue that the lack of a direct contractual relationship between Plaintiff and Sylvania renders Plaintiff's claim moot. (*See* Def.'s Reply Br. 11.) However, the Supreme Court of New Jersey has held "that a commercial buyer seeking damages for economic loss resulting from the purchase of defective goods may recover from . . . a remote supplier in a distributive chain for breach of warranty under the U.C.C.," and that "the buyer need not establish privity with the remote supplier to maintain an action for breach of express or implied warranties." *Spring Motors Distrib., Inc. v. Ford Motor Co.*, 98 N.J. 555, 561 (1985). Accordingly, Plaintiff's lack of a direct contractual relationship with Sylvania is no basis for dismissing the breach of express warranty claim.

Second, Defendants argue that Plaintiff's claim should be "barred by the U.C.C.'s pre-litigation notice requirement." (Def.'s Reply Br. 11) (*citing* N.J. Stat. Ann. 12A:2-607(3)(a)). However, "notice of breach of either [an] express or implied warranty is not required in an action against a remote[2] manufacturer who is not the immediate seller of a product," and even if notice is required, "notice-by-lawsuit may suffice." *Coyle v. Hornell Brewing Co.*, No. 08-02797, 2010 WL 2539386, at *6 (D.N.J. June 15, 2010). Therefore, lack of pre-litigation notice to Sylvania is no basis for dismissing Plaintiff's claim for breach of express warranty.

Third, Defendants argue that Plaintiff's amended complaint does not adequately plead how the affirmations on the 9004 SilverStar® packaging became part of the "basis of the bargain" for the product. (*See* Defs.' Br. 21-22.) Under New Jersey's "basis of the bargain" requirements, "plaintiff must only show that the alleged express warranties 'were of a kind which naturally would induce the purchase.'" *McDonough*, 2011 WL 2119107, at *4. Plaintiff asserts that both the Symbols on the front of the packaging and the Comparison Chart on the back contained affirmations that led him to believe that 9004 SilverStar® lamps were superior to Standard Lamps in the areas of brightness, down road visibility, and side road visibility. (*See* Am. Compl. ¶¶ 14-16.) The allegations therefore plausibly suggest that the affirmations would induce a purchase. As a result, under New Jersey law, Plaintiff does adequately plead how the affirmations on the SilverStar® packaging became part of the "basis of the bargain."

Last, Defendants argue that Plaintiff did not sufficiently allege breach of express warranty in his Amended Complaint. (*See* Defs.' Reply Br. 11.) More specifically, Defendants contend that Plaintiff "does not state a plausible claim that the headlamps fail to conform as represented." (*Id.*) However, the amended complaint illustrates otherwise. Plaintiff alleges that the SilverStar® packaging represented that SilverStar® lamps were superior to Standard Lamps in the areas of

---

[2] *See Coyle*, 2010 WL 2539386, at *6 (A remote manufacturer is a manufacturer "who is not the immediate seller in an express warranty case.").

16

brightness, down road visibility, and side road visibility. (*See* First Am. Compl. ¶ 16.) His alleged personal experience with the 9004 SliverStar® lamps was that they were not superior to Standard Lamps in these areas. (*See Id.* ¶¶ 30-33.) In fact, Plaintiff alleges that while having one Standard Lamp and one 9004 SilverStar® Lamp installed in his car at the same time, there was no noticeable difference in their performance. (*See* Am. Compl. at ¶ 32.) Since Plaintiff alleges that the SilverStar® lamps did not perform as advertised, Plaintiff sufficiently pleads breach.

      f.   Declaratory and Injunctive Relief

Remedies for declaratory and injunctive relief are "dependent on the claims the Court has allowed to move forward." *Disanto v. Best Buy Stores, L.P.*, No. 09-4727, slip op. at 7 (D.N.J. Aug. 31, 2010) (*See also DiCarlo v St. Mary Hosp.*, 530 F.3d 255, 269 (3d Cir. 2008)). Defendants assert that Plaintiff is not entitled to declaratory and injunctive relief because Plaintiff "has failed to state a claim under each of his other respective causes of action." (Defs.' Br., 22.) Defendants liken the Plaintiff's claim for declaratory and injunctive relief to the "vague plea for declaratory relief in *Glauberzon v. Pella Corporation*." (*Id.*) (*citing Glauberzon v. Pella Corp.*, No. 10-5929, 2011 WL 1337509, at *15 (D.N.J. Jan. 10, 2012)). However, in *Glauberzon*, the Court found that the Plaintiff did not sufficiently plead the underlying claims upon which the claim for declaratory and injunctive relief was based. *See Glauberzon*, 2011 WL 1337509, at *15. As set forth above, Plaintiff has successfully pled five of his six claims. Therefore, *Galuberzon* is inapposite. Accordingly, Plaintiff's claim for declaratory and injunctive relief will not be dismissed.

V.   **CONCLUSION**

For the reasons set forth above, Defendants' motion is **DENIED** in part and **GRANTED** in part.

                                                    s/Susan D. Wigenton, U.S.D.J.

Orig:   Clerk

Cc:   Hon. Madeline Cox Arleo, U.S.M.J.
      Parties