```
 1                    UNITED STATES DISTRICT COURT
                        DISTRICT OF NEW JERSEY
 2

 3   CHAUDHRI,                          .
                                        .
 4          Plaintiff,                  .
                                        .  Case No. 11-cv-05504
 5   vs.                                .
                                        .  Newark, New Jersey
 6   OSRAM SYLVANIA, INC., et al.,      .  November 15, 2012
                                        .
 7          Defendants.                 .
                                        .
 8

 9                       TRANSCRIPT OF HEARING
10            BEFORE THE HONORABLE MADELINE COX ARLEO
                    UNITED STATES MAGISTRATE JUDGE
11

12   APPEARANCES:

13   For the Plaintiff:      SIDNEY S. LIEBESMAN, ESQ.
                             Liebesman Law, L.L.C.
14                           1201 N Orange St., Ste 801
                             Wilmington, DE  19801
15                           (610) 721-3313

16                           THOMAS PACIORKOWSKI, ESQ.
                             Eichen Levinson & Crutchlow
17                           40 Ethel Road
                             Edison, NJ 08817
18                           (732) 777-0100
                             Email: Tpaciorkowski@njadvocates.com
19
                             BARRY R. EICHEN, ESQ.
20                           Eichen Crutchlow Zaslow & McElroy,
                             LLP
21                           40 Ethel Road
                             Edison, NJ 08817
22                           (732) 777-0100
                             Email: Beichen@njadvocates.com
23

24

25
```

```
 1   For the Defendants:        DAVID C. KISTLER, ESQ.
                                Blank Rome, LLP
 2                              301 Carnegie Center
                                3rd Floor
 3                              Princeton, NJ 08540
                                (609) 750-7700
 4                              Email: Kistler@BlankRome.com

 5                              EUNNICE H. EUN, ESQ.
                                Kirkland & Ellis LLP
 6                              655 Fifteenth Street, N.W
                                Washington, D.C. 20005-5793
 7                              (202) 879-5159
                                Email: Eunnice.eun@kirkland.com

 8

 9

10

11   Audio Operator:

12   Transcription Service:       KING TRANSCRIPTION SERVICES
                                  901 Route 23 South, Center Ste. 3
13                                Pompton Plains, NJ 07444
                                  (973) 237-6080
14
     Proceedings recorded by electronic sound recording; transcript
15   produced by transcription service.

16

17

18

19

20

21

22

23

24

25
```

```
 1              (Commencement of proceedings at 3:02 P.M.)

 2

 3              THE COURT:  Chaudhri v. Osram Sylvania.  Can I have

 4   appearances, please?  For the plaintiffs?

 5              MR. LIEBESMAN:  Sid Liebesman, Your Honor, from

 6   Liebesman Law.

 7              THE COURT:  Okay.  So you're supposed to be over

 8   there, aren't you?

 9              MR. LIEBESMAN:  Yeah, but they got to the table --

10              THE COURT:  They did.  They beat you to it, okay.

11              MR. LIEBESMAN:  I didn't want to suggest to them

12   that we switch sides --

13              THE COURT:  Throws off my balance in the universe

14   when people are on the wrong side.

15              MR. LIEBESMAN:  Well, I'm okay switching,

16   Your Honor, if -- it's up to Your Honor.

17              THE COURT:  That's okay.  I can -- I think I can

18   handle it today.  Okay.

19              MR. EICHEN:  As long as you know that the white hat

20   is on this side now.

21              THE COURT:  That's right.  It's a test for me.

22   Right?

23              MR. EICHEN:  Right.

24              THE COURT:  Okay.  And who else do we have?

25              MR. EICHEN:  Barry Eichen, Eichen Crutchlow Zaslow
```

1 | & McElroy.

2 |           THE COURT:  Okay.

3 |           MR. PACIORKOWSKI:  And Thomas Paciorkowski with

4 | Eichen Crutchlow Zaslow & McElroy.

5 |           THE COURT:  Okay.

6 |           MR. KISTLER:  David Kistler from Blank Rome.

7 |           THE COURT:  Okay.

8 |           MS. EUN:  Eunice Eun, Kirkland & Ellis for Osram

9 | Sylvania.

10 |           THE COURT:  Okay.

11 |           ATTORNEY FOR SIEMENS:  And I'm Eric -- in-house

12 | with Siemens, who is Osram's corporate parent.

13 |           THE COURT:  Okay, guys, have a seat.

14 |           I got your letters and I spent a good part of

15 | yesterday going back and looking at the complaint, looking

16 | at -- trying to understand precisely what the claim is here,

17 | and trying to understand what the -- what the real issue is.

18 | And there's been -- there was discussion, I think, about one

19 | interrogatory.

20 |           I think this is an overall breakdown on where do --

21 | where do you draw the line between merits and class discovery

22 | in a case like this.  And I'll begin by talking -- looking at

23 | the complaint.  I looked at the complaint because I wanted to

24 | see what the potential class was; right?  And I look at it,

25 | and the class is very broad.  It's -- I think the class --

1    so -- so all the consumer -- if I had to summarize this case,

2    if someone doesn't -- if I could tell my law clerk what this

3    was about in a nutshell, I would describe it as a Consumer

4    Fraud Act case, at its core, a fraud case, a

5    misrepresentation case about the packaging, and I guess on

6    some video advertisements for -- for these Sylvania

7    automotive headlamps, that they claim that they're brighter,

8    bigger, whatever they are, the three -- the three adjectives.

9    Brighter, further and wider than others.  And -- and that

10   class is "all" -- in paragraph 21 -- "all persons who

11   purchased SilverStar headlamps.  Excluded from the class are

12   defendant's officers, directors and employees."

13          So the class is -- just going back for six years,

14   all persons who bought headlamps.  It's a broad class.

15          So here's -- here's what I think I need to know

16   from you, and I think we have to start by maybe having a

17   meet-and-confer with the lawyers today.  There is some

18   overlap, we all know, between merits and class discovery.

19   Everyone knows that.  It's no secret.  And I really tried to

20   think about what does -- what do the plaintiffs need to make

21   their motion.  And I took a look at Rule 23, and it -- a

22   lot -- certainly -- need some discovery, defendants going to

23   want about the class, about -- about similarities between

24   class members, et cetera.  But what do you need from

25   Sylvania, the light bulb maker to prove the four-prong of

 1   Rule 23 and then the latter part of Rule 23?  How much do you

 2   really need to get into the whole merits of the fraud?

 3           That's -- and from your -- I think that the

 4   Rule 20- -- the 30(b)(6) notice, I looked at the list of the

 5   10 folks you want to depose, taken at their face, it looks

 6   like you want to take full merits discovery from the

 7   plaintiff's end.  I don't see any request to sort of limit it

 8   to some basic information.

 9           That's what I'm struggling with.  And we can talk

10   about this for a long time.  I also get the sense that

11   there's really not a sense of cooperation between the sides.

12   There was -- first it was five documents produced, and then

13   there was a rolling production, there seems to be more

14   documents produced, there's a claim about -- you know, they

15   want sales information.  They're entitled to some sales

16   information.  That goes to, certainly, merits of the claims.

17   No one's going to dispute they get Interrogatory Number 1,

18   how much claim, how much sales per year.  And then I get --

19   you know, they gave this general answer, and then there's a

20   follow-up answer that breaks it down a little bit more.

21           I don't -- I don't have discussion of any other

22   document requests or interrogatories that no one's responded

23   to.

24           I think you, in the first instance, need to say I

25   want just a -- I need certain discovery now about the fraud.

1    I mean, because there's all -- what I'm not getting a sense

2    of from the plaintiffs is what do you really need for class

3    discovery in terms of the underlying fraud.  That's really

4    what's missing, because -- have to give you something.  They

5    can't say you're getting nothing about the underlying

6    advertising.  They're entitled to some basic information

7    about the advertising and the testing that form the base- --

8    you know, if you look at the paragraph, it's really only --

9    13, 14 and 15 talk about the front of the packaging.  I know

10   there was some discussion where there was different packaging

11   and the packaging changed.  Well, maybe you give a 30(b)(6)

12   witness on that.  But you don't need to take every single

13   person on the merits.

14          So I'm at a loss of how to proceed, except maybe

15   ask you folks -- you can speak if you want to speak.  I'll

16   hear first from the plaintiffs.  My inclination is to have

17   you two speak a little bit, because you know what you need

18   and what you want.  And what I don't have from your letters

19   is a sense of you want -- I get from the plaintiffs we want

20   all of this, and I get from the defendants, we're not giving

21   you any, because technically you don't need any of it to make

22   your motion.  I think there's balance somewhere in the middle

23   that has to be struck.  And I think the balance needs to be

24   struck by the lawyers, rather than by me.

25          Counsel.

```
 1            MR. LIEBESMAN:  If I may, Your Honor, Sid
 2    Liebesman.  You know, we -- we endeavored to do exactly what
 3    Your Honor suggested without even having the suggestion from
 4    the Court; that is, the very first thing that the plaintiff
 5    did was issue a 30(b)(6) deposition notice for the purpose --
 6    and I explained this to defense counsel -- this was to make
 7    it more efficient for both sides.  The 30(b)(6) deposition
 8    was intended to have the defendant produce an individual that
 9    can explain who the persons are, what their roles are, so we
10    may know --
11            THE COURT:  But let me stop you for a minute.
12    Here's the problem with it.  It's broad.  For instance, I'm
13    sure there's all different -- you have a class -- and I
14    started out by going back to the complaint.  The proposed
15    class is extremely broad.  It's anyone who bought a
16    SilverStar light bulb for six years.
17            So you have a 30- --
18            MR. LIEBESMAN:  That was based on these
19    representations, though.
20            THE COURT:  Right.  But here is the 30- -- but this
21    is why you don't in the first instance, to send out a
22    30(b)(6) notice to say, I want someone to talk about
23    advertising, promotion, and marketing of the SilverStar for
24    six years.  That is huge.  That could be someone testifying
25    for months.
```

1             Testing of Silver Star headlights as it relates to

2    the claim within -- complaint -- SilverStar packaging,

3    including brightness, down road, side road -- headlights,

4    bulbs, actual -- that is -- that is not limited.  That is

5    very broad.

6             MR. LIEBESMAN:  That --

7             THE COURT:  And if I'm them and I get that, I say,

8    I don't know if that -- if I could give you someone that

9    could speak to that for six years, advertising, promotion,

10   and marketing.

11            MR. LIEBESMAN:  Your Honor, that's -- that's not

12   what the deposition -- so a deposition sought individuals who

13   would identify those persons who were engaged in that

14   activity.  We were not looking for substantive information to

15   that level, as that position -- the --

16            THE COURT:  Okay.  Then you've got to help me,

17   then, because I have the attachment.  And what I read from is

18   what -- is your notice.

19            MR. LIEBESMAN:  So, then -- so at the very top, the

20   qualifier at the very top.

21            THE COURT:  The names, job titles and functional

22   roles of those persons.

23            MR. LIEBESMAN:  Exactly.

24            THE COURT:  Currently employed.

25            MR. LIEBESMAN:  That was all we were looking for.

 1              THE COURT:  Persons currently or formerly employed.

 2              Now, I just start with that.  I mean, this is where

 3     you've got to give them some information, guys, because

 4     they're going to take some -- they're going to take some

 5     deposition of someone that's going to give you some little

 6     bit of background about this advertising.  I'm going to allow

 7     that.

 8              On the other hand, this is -- how many different

 9     types of SilverStar headlamps are there?  Is there more than

10     one?  Are there different variations?  Has it -- has the

11     marketing changed over time?  You're asking for the jobs

12     roles of all persons currently and formerly employed who have

13     been involved in advertising, promotion, and marketing.

14     That's probably hundreds of people.

15              MR. LIEBESMAN:  Well, that's exactly why we take

16     the deposition, because I don't know.  It could be three

17     people, and then we know exactly who we need to depose.

18              THE COURT:  Well, that -- well, that's where in the

19     first instance -- when you send something out like this, what

20     it prompts is them saying I'm not answering this, and then

21     you come to me.

22              And I guess, I would ask defense counsel, is there

23     someone presently who is charge of marketing, who could give

24     some background about -- some general information about the

25     advertising, the marketing, and the testing behind the

 1   advertising and marketing?

 2            MS. EUN:  Your Honor, yes, we -- we could -- we

 3   could designate somebody to testify on those topics.

 4            But our issue, as you -- as you just summarized,

 5   with this deposition notice was that in the first instance,

 6   it asked for a broad range of information, and secondly, we

 7   felt like that -- we felt that that information was actually

 8   given in our initial disclosures as it requests in

 9   Attachment A to the September 27 deposition notice, as well

10   as in our answer to Interrogatory 16.  And when we --

11            THE COURT:  Now, tell me how it did that.

12            MS. EUN:  Because what Attachment A does is

13   requests the names, jobs, titles and functional roles of the

14   persons involved in basically the marketing and the testing

15   of the products.  And in our initial disclosures, we

16   disclosed relevant individuals who will have relevant

17   information to the claims and defenses in this case, and in

18   the answer to Interrogatory 16, plaintiff's Interrogatory 16,

19   we answered with the names of 10 individuals who plaintiffs

20   subsequently noticed for deposition of the individuals that

21   are primarily responsible for the advertising and testing of

22   the SilverStar product.

23            THE COURT:  Okay.  But here's -- here's what you

24   want to do.  You don't want him to take 16 depositions;

25   right?

```
 1              MS. EUN:  Right.

 2              THE COURT:  Okay.  That's a good idea.

 3              What's a good idea is to help him, say, we'll give

 4    you the direct -- the present director of marketing.  Have a

 5    meet-and-confer with him and say, look, there are -- I don't

 6    know -- are there -- are there more than one -- is the 9004

 7    SilverStar headlamp, is that what we're talking about here?

 8    Let me look at the complaint again.

 9              MS. EUN:  That's the one that plaintiff purchased,

10    yes.

11              THE COURT:  Okay.  So you say for the 9004, it's --

12    we've been selling this brand -- selling it for three years,

13    and we'll give you someone, because that's what the -- this

14    plaintiff is about is the 9004.  So we're going to give

15    you -- we still sell it.  Now, although the class is for

16    anyone purchased the SilverStar headlamps, as opposed to the

17    SilverStar 9004, are there different variations of the -- all

18    the different generations of SilverStar lamps?  Are there --

19    is there 9004 or 9001 and 9002?  Are there all different?

20              MS. EUN:  Absolutely, I think --

21              THE COURT:  Right.

22              MS. EUN:  -- that there are between 15 and 20.

23              THE COURT:  Right.  So why don't you start -- I'm

24    not telling you how to do your job.  Why don't you say, since

25    this point -- the 9004 and our complaint's based on the 9004,
```

1  why don't you give us someone who can give us information on

2  the 9004, who can talk about present advertising and testing

3  of the type alleged in the complaint which forms the basis of

4  the claims.  And you can get some background information.

5  And then maybe you can also ask someone to explain the

6  different variations of the SilverStar headlamps, because

7  that would go to commonality.  I mean you're going to --

8  you're not certifying the class based on the 9004.  You're

9  certifying it based on all SilverStar headlamps.  Do all

10 SilverStar headlamps have the same kind of advertising?  I

11 don't know.  Is that something you want to know?

12         MR. LIEBESMAN:  Well, sure -- well, yes,

13 Your Honor.

14         THE COURT:  Okay.  So that -- so that's what I

15 think the problem is.  They're going to produce a 30(b)(6)

16 witness at the -- in the first instance, rather than you

17 having to go through taking 10 different depositions and --

18 that, I don't really know about that.  That's not my job.  A

19 30(b)(6) has to become educated on these topics.

20         So why don't you agree -- I'm going to give you

21 some time to talk -- agree on a person and agree on what

22 they're going to talk about.  It's not reasonable in the

23 30 -- in the very first deposition in the class certification

24 part of the case, to have one person talk about all

25 advertising for all headlights for all cars for a six-year

```
 1   period.  Right?

 2              MR. EICHEN:  We're fine with that, Judge.  We would

 3   only ask that you -- at least we can submit an order that it

 4   be taken by X date, some outside date so that we can get it

 5   done.

 6              THE COURT:  That's easy.  That's easy.  That's the

 7   easiest thing anyone's asked me to do all day.

 8              MR. EICHEN:  And also, from what I understand,

 9   there have been -- we've been asked to give -- to tell them

10   what specific questions we're going to ask.  I don't think

11   that that should be --

12              THE COURT:  Well, no one does that.  You give

13   topics.  Everyone -- we're all lawyers.  We all know you give

14   topics.

15              But, for instance, I think it would -- if you're

16   willing to -- in the first instance, to ask them about the

17   advertising and marketing for the 9004 SilverStar headlamp,

18   you can -- can you narrow it to a time frame?  Could you tell

19   them whether it's changed over time?  Has it come into -- has

20   the advertising been consistent for three years?  Let someone

21   talk about that.

22              MS. EUN:  Yeah, we have in our interrogatory

23   responses.

24              THE COURT:  And then take that person and ask them

25   about the testing.
```

1           Now, this is not an invitation for the -- to the

2     plaintiffs to go into all the -- you know, expert -- about

3     expert testimony about the legitimacy or the correctness of

4     the testing, but I think they're entitled to some latitude to

5     say, what do you base -- what are you basing this on, because

6     that's the core of the whole case.  The core of the whole

7     case is that -- as I read the complaint, it's not even

8     that -- that the advertising was false as much as it's

9     misleading.  Right?  You have something in the back, there

10    was a disclaimer saying it was -- compared to 80 percent of

11    halogens at 80 percent strength.  I mean is that -- that's

12    really the issue is -- were misleading and false.  Right?

13          MR. LIEBESMAN:  Well, actually we would use from

14    the documents produced by the defendant, I think I'm pretty

15    comfortable we're going to show that it's false.  It's more

16    than misleading.

17          THE COURT:  Right.  So -- but you can ask them for

18    the study.  I mean you have some study -- some background.

19    If it's not oner- -- see, here's -- here's why -- other

20    practical matter.  If it's not -- if it's something like you

21    make these representations, you did a study, and there are

22    some studies out there and they are not onerous, they're not

23    proprietary.  If they are proprietary, we can have -- we

24    could have it for attorneys' eyes only in the first instance,

25    and here are the studies we did before we did this

1    advertising.  That's what you can turn over to them, if it

2    can be accomplished in that sort of way.  Because even though

3    that's technically merits discovery, maybe more merits than

4    class cert, if it's not onerous and it can be accomplished

5    with a protective order, I would err on the side of giving it

6    to them, because what I don't want to happen in this case, if

7    they move for class certification and you crossmove to

8    dismiss, and you're going to necessarily bring into issue

9    facts which they're going to say, hey, you didn't let us have

10   discovery on that, and now we can't properly oppose the

11   motion to dismiss on the merits, and that -- that's where a

12   lot of tension falls between merits and fact discovery.

13         So I'm going to give them a little bit of latitude.

14   I'm not going to expect full-blown discovery on all

15   advertising for all the SilverStar headlamps, but I'm going

16   to allow them to take some of this preliminary discovery

17   about the marketing and the studies that back up the

18   marketing.  And I don't think that seems to me overly large,

19   particularly if we limit in the first instance in the 9004

20   SilverStar headlamp, and then maybe some discovery about

21   whether it applies -- the same studies and representations

22   exist on other kind of headlamps.

23         So what I want you to do is this.  I'm going to

24   give you a few minutes to talk.  I don't know from the

25   plaintiff's perspective, are there any other -- a lot of your

1    paper seemed to focus on wanting this deposition.

2              MR. LIEBESMAN:  Well, Your Honor, yeah, that's

3    true.  But I -- really quickly, because I know Your Honor

4    doesn't want to really get into this, but I just sort of like

5    to --

6              THE COURT:  No, I'll get into it.

7                   (Simultaneous conversation)

8              MR. LIEBESMAN:  I'd like you to appreciate where

9    we're coming from.  We issued a 30(b)(6) deposition notice

10   and heard nothing from the defendant.  Three business days

11   before the deposition was to occur --

12             THE COURT:  They wrote you a letter saying we're

13   not doing it.

14             MR. LIEBESMAN:  Well, because we asked them what

15   about this deposition that's supposed to take place in three

16   business days?  Oh, we're not going to produce anybody.

17             So now, we don't -- we're at a loss of having --

18   you know, knowing what these people really did, they answered

19   that Interrogatory Number 16 listing the 10 people, whatever.

20   So we notice the depositions of those 10 people, having no

21   information from the defendant about what they did --

22             THE COURT:  I'm with you.  I read your papers.

23             MR. LIEBESMAN:  So they don't even say --

24   Your Honor, they don't move for a protective order and me --

25   you know, I don't know where they come out with this under

1    the federal rules, you don't do this.  No motion for a

2    protective order.  No notice to us and sufficiently in

3    advance that they're not going to produce these witnesses.

4    The defendant -- defense counsel crosses her arms and says,

5    no, we're not going to produce anybody.  Don't even let the

6    deposition -- what I would have done, I would have let at

7    least one deposition go forward, and then if you think we're

8    going too far, use her objection, and then we have a record

9    to come to Your Honor, instead like seeking an advisory

10   opinion, which is almost what we're doing here.  And that's

11   the problem, Your Honor.  Not even saying -- just saying, no,

12   we're not going to produce somebody when there's a

13   legitimate, valid deposition notice under the federal rules.

14            THE COURT:  I hear you.

15            MR. LIEBESMAN:  That to me is unheard of.  It's

16   sanctionable, actually.

17            THE COURT:  Well, here's what I think.  I think you

18   need -- both sides need to sort of put that behind you and

19   move forward, because it's not getting you anywhere.  And I

20   learn real fast who's being obstreperous and who isn't being

21   obstreperous, and I'm not a fan of the obstreperous lawyer.

22   And I really don't like to micromanage litigation, but I

23   will, if it's necessary, and that jury room becomes a

24   deposition room, and I've had cases with every other Friday,

25   we go through everything until we get cases ready for trial.

 1   Judge Pisano taught me that -- that little trick 10 years

 2   ago, that if cases are just -- things don't happen, you bring

 3   them in every two weeks, you resolve whatever's out there,

 4   and you move them forward.  And I'll do that here.

 5           I really hate to do that in the first instance when

 6   there's good lawyers, because I think lawyers should be able

 7   to have their own way to handle litigation and manage it the

 8   way it is.

 9           But this is not the best way to handle a discovery

10   dispute.

11           I hear you, but I also see that -- you know,

12   there's more than what's on the written paper, but the

13   written paper looked like it was a little broad, what you've

14   asked for, but I don't see that there was a meaningful

15   attempt to try to resolve this.  And I -- I -- I appreciate

16   what you're saying, but I think we need to put that behind us

17   and we move forward and try to get the case teed up for

18   motions.

19           So if you want to say something, but we really

20   don't -- I don't -- I don't feel a need to hear a response

21   from you, unless you want to say something.

22           MS. EUN:  It just goes to the deposition.  As we

23   previously stated, we're happy to cooperate with plaintiff's

24   lawyers to establish the guidelines for a 30(b)(6) deposition

25   and to prep a -- wit- -- a deposition to produce for

 1  testimony.

 2          But the one issue that we're going to -- the one

 3  hurdle that we're going to have to deal with is the

 4  protective order.  Before any more discovery happens, we're

 5  going to have to agree upon a protective order.

 6          THE COURT:  Well, it's very easy.

 7          MS. EUN:  Yeah.

 8          THE COURT:  It's the easiest thing out there

 9  because we have a model in append- -- appended to our local

10  rules, 5.3.  You fill in the blanks, you put in your name and

11  their name, and there's two levels of protection, there's

12  attorneys' eyes only, and there's confidential.  You mark the

13  documents.  If you can't resolve them, you come to me and I

14  resolve it.  Very simple.  It's not complicated.

15          So you can mark the deposition for confidential,

16  however you see fit, and you can print that off.  You have

17  to -- since you're the one that's seeking the confidentiality

18  order, you have to submit an affidavit consistent with Local

19  Rule 5.3, explaining why it needs to be in place, what

20  irreparable harm will result if it's not entered, and if

21  certain documents are disclosed, and you have to

22  electronically file the certification and the order, and then

23  after it's electronically filed, if there's no objections,

24  then I'll sign it.

25          MS. EUN:  We'll take a look at that and discuss

 1   with plaintiff's counsel.

 2            THE COURT:  Okay?  Yes.

 3            MR. LIEBESMAN:  Your Honor, that's fine.  I mean

 4   I'm glad that she brought up the protective order.

 5            There's actually one issue that we have that's

 6   preventing us from reaching our own protective order, which

 7   sort of parrots the model.  This is something that defendant

 8   added that is not in the model, which we have an objection

 9   to.  And it may be, like you're talking about in the

10   depositions, you can certainly -- we could resolve this if

11   Your Honor sort of chimes in on this.  Because it's not in

12   the model order.  The defendant is trying to preclude who we

13   can use as an expert, by putting in the protective order that

14   we cannot hire an expert who has competed with Sylvania for

15   the past three years, not worked for Sylvania, not currently

16   compete, we cannot hire anybody that competed with this

17   international conglomerate for the past three years.  We have

18   an objection to that.  We get to choose who our experts are.

19   We said we're happy to -- not get someone who currently

20   competes with Sylvania, but we're not going to agree that

21   they can limit who our expert can be, saying that they cannot

22   have competed with them for the past three years.  That is --

23            THE COURT:  Well, an expert is a neutral.  Right?

24   An expert isn't someone who works for the competitor.

25   Someone who's out in the industry, who holds himself out as

 1  an expert.  Right?  They're not -- who's the big competitor

 2  of Sylvania?  GE.  And you can't be someone who works

 3  in-house for GE.  He's going to be somebody who is an

 4  independent person, right, who is going to -- who hasn't

 5  worked for anyone arguably for three years.

 6            MR. LIEBESMAN:  Well, I don't where you come up --

 7  I don't where they come up with the three years.  I mean,

 8  we may -- we may have -- want to go to an expert that has

 9  worked in the industry and somehow --

10            THE COURT:  Yes.

11            MR. LIEBESMAN:  And they -- and if they want to try

12  to discredit the expert because of his or her background,

13  they can do that.  But to say in the first instant we can't

14  even go to an expert that may have competed with Sylvania for

15  the past three years, that is the hang-up we have with --

16            THE COURT:  Well, that -- that -- that language

17  shouldn't be in a protective order, because that's asking for

18  a ruling in advance about who can see certain information.

19  So that should be stricken from the protective order.  Number

20  one.  I don't want that language in a protective order.

21            When you come to the point of if something's marked

22  highly confidential, which is attorneys' eyes only, that's

23  fine; right?  So if it's attorneys' eyes only, an expert

24  doesn't get to see it anyway.  It's for attorneys' eyes only.

25  I don't know if -- I don't know if that -- the highest level

1  of confidentiality has to go to experts.

2          But if it's -- right now, I can't imagine that for

3  the purposes of class certification, that there's going to be

4  any highly confidential information that an expert needs to

5  see.

6          MR. LIEBESMAN:  Well, Your Honor, I mean we're

7  talking about a consultant, we reserve the right to have

8  expert -- it's not uncommon to have expert testimony at a

9  class certification hearing to testify to the extent that the

10 representations --

11         THE COURT:  Okay.

12         MR. LIEBESMAN:  -- made on those covers are false

13 and why they're false.

14         THE COURT:  Okay.  Well --

15         MR. LIEBESMAN:  So --

16         THE COURT:  Well, here's the thing.  There's going

17 to be -- here's -- there's going to be attorneys' eyes only

18 and confidential, which is for lawyers, experts, parties;

19 right?  So I don't think the highest tier -- I think the

20 highest tier's just for lawyers; right?  And the second tier

21 is for lawyers and experts.  So when you identify your

22 expert, you should -- as soon as you know who your expert is,

23 you should id- -- you should disclose that as soon as

24 possible to them, and if they have any objection to that

25 particular expert looking at confidential documents, you

1  should let them know right away, and you can tee it up and

2  bring it to me.

3          But that's really the way it would get brought to

4  my attention.

5          MR. LIEBESMAN:  Yeah, Your Honor, I've never had to

6  disclose a consulting expert before.  I'm -- I'm not talking

7  about a testifying expert right now, because I don't --

8          THE COURT:  Well, let -- why don't you take a look

9  at the model --

10         MR. LIEBESMAN:  I'm happy to -- I'm happy to --

11         THE COURT:  Because -- because --

12               (Simultaneous conversation)

13         MR. LIEBESMAN:  -- model -- agreement --

14         THE COURT:  Because here's what -- there's two

15  levels; right?  If it's attorneys' eyes only, it's highly

16  confidential that no one else can see except you, it wouldn't

17  involve the expert.

18         The second tier is pretty broad, so it's for

19  attorneys, it's for clients.  If a client can -- if your

20  client can see it, certainly a competitor can see it.  Right?

21         So I don't see what the -- I don't -- I think we're

22  trying to resolve a problem that doesn't exist.  Do you know

23  any -- do you want to be respond to this issue?  I mean ...

24         MS. EUN:  Well, I think that the concern is that

25  contrary to what plaintiff's counsel is saying, we're seeking

 1   a narrow -- we're seeking kind of a narrow definition of a

 2   direct competitor, someone who occupies the same product

 3   market as Sylvania.  And the reason that we're -- we were

 4   looking for -- to exclude someone who has worked in the past

 5   three years for direct competitor from seeing highly

 6   confidential documents, as was drafted in our protective

 7   order, was that it's a small and specialized industry,

 8   especially considering the recession, the current recession

 9   and the economic events of the past few years, anyone who is

10   not currently employed by a direct competitor is likely to be

11   looking for a job in the same industry.  And that's what we

12   are seeking to protect.

13          And we are willing to look at the model -- the

14   protective order that you've advised us to look at under 5.3

15   of the local rules, and we are happy to evaluate whether any

16   proposed experts have worked for a direct competitor in the

17   last three years, so long as -- or -- or that we would object

18   to anyone that they propose that's an expert because they've

19   previously worked for --

20          THE COURT:  Why don't you do this?  Why don't you

21   tell them who you believe are the direct competitors?  If

22   anyone's worked in a particular industry -- and for these

23   companies in the past three years, and then they could -- you

24   know, it may be much ado about nothing.

25          But I'm not going to put the burden on them in the

 1   first instance, if they have a non-testifying expert, to say,

 2   you know, we have to check their credential -- we -- we may

 3   not know who you're think -- you may not be thinking of the

 4   same person we are.

 5        So you should write -- if it's -- it's not

 6   confidential or attorneys' eyes only, anyone can see the

 7   information.  Right?  If it's confidential and you're

 8   concerned that there may be someone, I guess, arguably, who

 9   is now a consultant, but in your mind two years ago worked

10   for a competitor, you need to say anyone who worked in

11   this -- in this capacity for these companies, and then they

12   can respond in accordingly.  If there's an issue about it,

13   you should raise it because you want to be consistent -- if

14   it's confidential information, you want make sure there's no

15   one in your -- your consultant isn't someone who is a

16   competitor.  And, for instance, he could be a consultant that

17   still provides consulting advice to competitors, and they may

18   have an issue with it.

19        So I think it's better for confidential and for --

20   if you're going to show confidential information to anyone

21   that has recent ties to them, you should let them know who it

22   is so I could resolve it, rather than -- rather than have it

23   be secret.  You can't take confidential information and say,

24   well, he's our -- he's our consulting expert, we don't want

25   to tell you who it is, but we want to show them confidential

1   information, because I think the local rule even requires the

2   person who sees the confidential information to be agree --

3   to agree to be bound by a discovery confidentiality order.

4            MR. LIEBESMAN:  Right.

5            THE COURT:  So they'll see who it is.

6            MR. LIEBESMAN:  Well, the expert will agree to be

7   bound, but there's no burden to produce in advance a

8   non-testifying consulting expert to the adverse party in the

9   litigation.

10           THE COURT:  Right.  But there's an obligation to --

11  to have him sign this.

12           MR. LIEBESMAN:  Absolutely.

13           THE COURT:  So that's the point.  I mean, she's

14  going to -- before you give any information to anyone in your

15  company, they're going to sign this agreement, agreement to

16  be bound.

17           Once they sign it, you're on notice of who the

18  person is.

19           MS. EUN:  They're -- no.  I believe that what

20  plaintiff's counsel is saying is that they don't want to

21  disclose to us the identity of any potential experts, and

22  that's precisely the problem that we would have is --

23           THE COURT:  No, they're not saying that.  They're

24  saying -- they have -- first of all, the testifying expert,

25  they have to disclose it.  It's called Rule 26.  Okay.

1   That's easy.

2           For non-testifying experts, they're saying we don't

3   have to disclose it, and they're right that in the normal

4   course you don't have to test- -- they don't have to disclose

5   non-testifying experts.  That's the rule.  That's the Federal

6   Rules of Civil Procedure.

7           But what they do have to disclose is anyone who's

8   going to look at your confidential information, because they

9   have to sign an agreement to be bound by it.

10          MR. EICHEN:  Yeah, but we keep that agreement,

11  Your Honor.  That confidentiality -- that doesn't go back to

12  them.  We keep it.  We give it to the expert.  What we really

13  don't have to disclose a non-testifying expert.

14          MS. EUN:  You do have to give that agreement to us.

15          THE COURT:  Well, here's -- here's the rub.  What

16  if your non-testifying expert is someone who is a direct

17  competitor of them who gives -- is someone who they would not

18  want to have see -- would be concerned about them seeing the

19  confidential information.

20          MR. EICHEN:  Who is a current competitor?

21          THE COURT:  Yes.

22          MR. LIEBESMAN:  We've already agreed we're not

23  going to use a current --

24          MR. EICHEN:  Yeah, we're not going to do a current

25  competitor.  We're not going to --

1              THE COURT:  Well, someone who left -- you know --

2              MR. LIEBESMAN:  Your Honor, there's no affirmative

3    authority for -- for this -- for us to be engaging in --

4    there's no affirmative authority that the defendant can

5    produce -- obviously, they haven't produced any yet.

6              THE COURT:  Here's what I'm going to do.  It's very

7    simple.  I want you to give them a list of -- of persons that

8    you're concerned -- when you -- who you want to describe as

9    direct competitors.  Okay?  And you tell them whether --

10   whether someone is.

11             If you haven't -- and let's wait and see until we

12   get to the discovery -- let's see how many documents are

13   marked confidential or non-confidential.

14             MR. LIEBESMAN:  Everything is marked -- should come

15   as no surprise, Your Honor.  They marked everything

16   confidential.

17             MS. EUN:  Not everything was marked confidential.

18             MR. LIEBESMAN:  Well, the cover letter said

19   everything is being produced --

20             MS. EUN:  Pursuant to the agreed-upon terms of the

21   protective order.

22             MR. LIEBESMAN:  There is no agreed-upon protective

23   order.

24             THE COURT:  So you're going to use 5.3.  Okay?  And

25   I want -- I am -- to avoid any other discovery dispute,

1   you -- how many non-testifying experts do you have?

2            MR. LIEBESMAN:  One, Your Honor.

3            THE COURT:  Okay.  So she's going to give you the

4   list.  And I want you to -- to avoid this problem, I want you

5   to advise the Court, without advising his name, if that

6   person has worked full -- as full-time employee of one of

7   these competitors in the last three years.  If they have --

8   then I'll decide how we're going to handle it.  If they

9   haven't, then we -- it is much ado about nothing, and then

10  we're going to avoid another discovery dispute.

11           MS. EUN:  Just so it's clear that no confidential

12  documents can be shown to that person prior to your

13  determination.

14           THE COURT:  Because he has one expert.  He's not --

15  one non-testifying person.  He is not going to disclose that

16  person's name.  He is not going to show any documents.

17  You're going to say, here are the people -- here are the

18  competitors we're concerned about, and he's going to do a

19  check with this -- this unnamed person, and say, have you

20  worked for any of these companies in the past three years.

21  If he hasn't, then we have no issue.  If he has, then I'll

22  decide how we proceed from there.  Before any documents are

23  shown.  Because I'm getting the sense that there's not even

24  an effort to try to resolve this without involving me.  And

25  that's really what needs to be done, because you have

1    competitors.  On the other hand, look, they want to know if

2    someone left their biggest competitor a week ago and may need

3    to go back after they stop being a consultant in a week.

4    That's legitimate.  So the way you do it is say, I'll check

5    with my guys, and I'll make sure that they didn't recently

6    come off working for a competitor.  And then we'll take it

7    from there.

8              So you get him that letter by Monday.  And you

9    already have your non-testifying expert.  And you let him --

10   him or her know within two weeks after that if there's an

11   issue, and copy me on the letter.  I've con- -- I've met with

12   my client -- my non-testifying expert.  You don't have to

13   identify him.  He or she advises me they have not worked in

14   the last three years for any of these.  And that's how we'll

15   do it.

16             MR. EICHEN:  And I assume they're also going to get

17   us the 30(b)(6)?

18             THE COURT:  I'm giving you a break and you're going

19   to meet and confer, and you're going to talk about place,

20   time, and topics for the 30(b)(6) witness, before we leave.

21   I'll come back in a half hour, or you can let Jessica know

22   when you're ready.  And I want to know that.  I want to know

23   if there is -- you have a recent letter that you sent to me

24   about their interrogatory answers.  I'm not going to deal

25   with that today.  I'm going to direct you to meet and confer

 1    with them today to see if you can resolve that.

 2              Yes.

 3              MR. LIEBESMAN:  I can make this easy too.  I'll

 4    state on the record, as we told them, the plaintiff has

 5    produced all documents and all information that he has.

 6              THE COURT:  Look, the plaintiff is the guy that

 7    says he bought a headlight.  That's what he said.  I went

 8    into the store and I bought a headlight, and it didn't have

 9    the -- and it didn't have the -- it didn't work the way I

10    thought it would work.

11              Here's what they say about the plaintiff:  On

12    March 11, 2009, plaintiff purchased one package of the

13    Sylvania's 9004 SilverStar lamps from Walmart in Piscataway

14    for his personal use.  He paid 37.63 exclusive of taxes.

15    Plaintiff based his purchase on the false representation --

16    representations described above.

17              So what additional information do you want from the

18    plaintiff?

19              MS. EUN:  As we detail in our letter, Your Honor --

20              THE COURT:  I didn't read your letter, and I'll

21    tell you why I didn't read your letter.  Because I got your

22    letter, I think, two or three days ago.  They hadn't

23    responded yet.  And I really discourage and will never

24    entertain again -- this is your one chance in this case --

25    hearing a discovery dispute without both sides having an

1    opportunity to reply in writing.  If I get a letter the day

2    of the hearing when I have a bunch of briefs and I have six

3    other conferences before this conference at 2:30 in the

4    afternoon, I don't have the time to devote to resolving the

5    issue.  And I think it's unfair to even raise -- to deal with

6    the issue when they haven't been given enough time to respond

7    amply.  Okay?  But -- so I'll give you a little bit of

8    latitude to talk about this.  But my preference is that you

9    meet and confer with them and try to resolve the issue.

10            I can't imagine how much information you expect to

11   get from the plaintiff, who went out and bought a light bulb

12   at Walmart.  That's his story.  What is it that -- what --

13   what -- and you're going to take his deposition.  Right?

14            MS. EUN:  Absolutely.

15            THE COURT:  So tell me what other additional facts

16   or information you want in interrogatory that you're not

17   going to get at his deposition.

18            MS. EUN:  Well, Your Honor, and I'm sure as you

19   cannot appreciate if you haven't read our letter yet, but we

20   have made numerous attempts to meet and confer over this

21   issue.

22            THE COURT:  Tell me -- tell me what -- what

23   information they haven't given you.

24            MS. EUN:  The information that they haven't given

25   us primarily relates to the interrogatories.  And we -- we

 1  had number of --

 2            THE COURT:  Tell me what information they haven't

 3  given you, factually.  Don't tell me what interrogatories

 4  weren't answered properly.  Tell me what information you

 5  don't have from this plaintiff.

 6            MS. EUN:  The information that we don't have is

 7  information to support their -- the contentions in their

 8  complaint.  That is one of our --

 9            THE COURT:  I'm going to ask it again.  Factually,

10  what -- are you asking for legal -- it sounds like you're

11  looking for legal conclusions.

12            MS. EUN:  No, Your Honor, we're looking for

13  information that we need in order to oppose our class

14  certification motion.

15            THE COURT:  Give me an example of a fact that you

16  don't have.

17            MS. EUN:  For example, what information do they

18  have that -- to support their contention that putative class

19  members all relied on the packaging in the same way that the

20  plaintiff did.

21            THE COURT:  I don't think they're ever going to be

22  able to answer that.  I don't think that this --

23  interrogatories are directed to a plaintiff.  Okay.  He

24  cannot -- he has to certify them, just like he does in a

25  deposition.  This plaintiff cannot certify nor does he have

1   personal knowledge of what other people relied on.  He

2   doesn't know.  It's a -- it's an impossible question to ask

3   Mr. Chaudhri to answer.  He can't.  He has no idea.

4            MS. EUN:  Well, then, what we simply ask is that

5   they supplement their responses to say that they don't have

6   that information.  But -- and we've asked them to do that and

7   they haven't done that.

8            THE COURT:  Well, you can't -- you -- the

9   interrogatory's directed to the class representative.  He

10  cannot possibly have knowledge of what other people --

11  unknown people relied on.  That's a legal argument you're

12  going to be making in your brief.  Your opposition to class

13  certification is we don't know -- it's impossible to know

14  how -- whether people bought the light bulb because it was

15  the cheapest, because they just grabbed the first one off the

16  shelf or whether they relied on the packaging.  No one knows

17  that.  You can make that legal argument.  You don't need --

18  you can't ask him to ask about somebody he doesn't have

19  personal knowledge of.

20           MS. EUN:  Well, there -- there are some

21  interrogatories that do go to his personal knowledge that are

22  also relevant to our opposition to class --

23           THE COURT:  Give me an example.

24           MS. EUN:  -- certification --

25           THE COURT:  Because I'm not going order him to

1   answer that -- go ahead.

2           MS. EUN:  -- for example, the -- the service and

3   maintenance history of his car; the service and maintenance

4   history of his headlight mechanism; the service and

5   maintenance history of the headlamps that were installed in

6   the car.  These are all things that we've asked for and that

7   we haven't received a sufficient response, even though during

8   our meet-and-confer we believed we made some progress, and we

9   believed that plaintiff's counsel had stated that they would

10  consider --

11              (Simultaneous conversation)

12          THE COURT:  Can I just ask you a question?  What

13  does the maintenance --

14          MS. EUN:  -- supplementing their responses.

15          THE COURT:  -- history of his car have to do with

16  the light bulbs?

17          MS. EUN:  Because the performance of a headlamp

18  doesn't just have to do with the specific headlamp.  It has

19  to do with the headlamp mechanism.  It has to do with

20  anything electrically related to the car, because that's how

21  a headlamp is powered.  And so these are all issues that are

22  going to go to commonality, typicality, predominance, all

23  arguments that we're going to make in our opposition to class

24  certification.

25          MR. LIEBESMAN:  Well, then, Your Honor, I ask you

1   to certify the class at this very moment because the

2   defendants on record show that they only test 4 percent of

3   the vehicles.  Here, defense counsel said it depends on the

4   vehicle.  It depends on the mechanism- --

5         THE COURT:  Okay.  Here's what you do.  Give him --

6   he bought it for his car.  Disclose the make, the model, the

7   year of the car.  Ask him what the maintenance history is, if

8   he remembers.  And if he has any documents about the

9   maintenance history, turn them over in narrative form and let

10  them ask questions about how he maintains his car at his

11  deposition.

12        MR. LIEBESMAN:  That's all been done, Your Honor.

13        MS. EUN:  What -- the way that they've answered

14  those questions is that the vehicle is no longer in the

15  possession, so they don't have any other information.

16        THE COURT:  If the vehicle isn't in his possession,

17  it's not in his -- is that true?  Is that what you wrote?

18        MR. LIEBESMAN:  Yes.

19        THE COURT:  Okay.  Did he sell the car?

20        MR. LIEBESMAN:  To his brother.

21        THE COURT:  I think I'm in People's Court right

22  now.  I've got to tell you --

23        MR. LIEBESMAN:  I'm sorry, Your Honor, I really --

24             (Simultaneous conversation)

25        THE COURT:  -- it's ridiculous.  And I have to tell

1    you, this -- you're big firms.  This is an embarrassing

2    record right now.  This is a question about what's the

3    history of the car.  If the guy sold the car, he -- I -- have

4    you ever had -- you've -- the first car you ever owned.  No

5    one is.  We all have old cars.  I don't remember the

6    maintenance history.  I have no idea.  Most people don't,

7    unless you're a mechanic.  If he sold the car, when did he

8    sell -- tell them -- give them the information.  You sold the

9    car in 2010.  To the best of his knowledge, he had it for

10   four years.  To the best of his knowledge, he had regular oil

11   to -- he bought it used, he bought it new, whatever it is,

12   tell her.  If he has any maintenance records, tell her.  If

13   he doesn't have any, tell her.

14          That's what you do.  And -- you can't get water out

15   of a stone.  It is what it is.  I mean --

16               (Simultaneous conversation)

17          MS. EUN:  We understand that, Your Honor, but

18   that's precisely the information that we're looking for.

19          THE COURT:  But that's why you're going to meet and

20   confer right now before we leave the courtroom, and you're

21   going to agree to give her that information.  Did you -- how

22   long did he own the car for?  Do we know?

23          MR. EICHEN:  We don't know how long he owned the

24   car, but he no longer owned the car over a year and a half

25   ago.  So he --

1           THE COURT:  Well -- call him up and supplement it.

2  He owned the car.  He bought it new.  He bought it used.  He

3  owned it for four years.  He did not keep regular -- he has

4  maintenance records.  Some people are very careful about

5  their records.  He turned them over to the new owner.  He

6  sold it to X.  That's all you have to do, and that'll end the

7  inquiry.  It'll be -- it's a 20-minute conversation with your

8  client and give them the information.

9           MR. EICHEN:  We already did that, Your Honor.  And

10  we disclosed that he has no maintenance records for this

11  vehicle.  And we --

12                 (Simultaneous conversation)

13           THE COURT:  -- okay.  He has no maintenance

14  records.  So she's told that he has no maintenance records.

15  So find out when he bought it, when he sold it, whether he

16  bought it new or old and who he sold it to.

17           MS. EUN:  All right.  That's precisely the

18  information that we're looking for that we haven't gotten.

19           THE COURT:  But if he tells you -- if they tell you

20  the year and the make and the model, that should be enough

21  for you -- I mean -- this -- this case is not going to turn

22  on -- maintenance of this car.  It's sort of extraneous,

23  frankly.

24           MS. EUN:  It's not just the maintenance of the car,

25  Your Honor.  It's the maintenance of the headlight mechanism

 1   and the headlamps.  And we -- we understand your position.

 2   And we -- but it's just precisely the information that you

 3   state that we should be given that we haven't been given.

 4            THE COURT:  Okay.  Well, ask him if he has any --

 5   he doesn't have the car anymore and he has no maintenance

 6   records.  Find out when he bought it, when he sold it,

 7   whether he bought it new or old, and then if he recalls

 8   whether he did -- he ever replaced the headlights before

 9   that.

10            MR. EICHEN:  Judge, we'll do all that.

11            THE COURT:  That's it.  I mean if he says this is

12   the only time he ever replaced it or I replaced them

13   frequently, if I bought it new, I replaced once and I sold

14   it, that's the story, that's the story.

15            MR. EICHEN:  Frankly, it really has no relevance to

16   whether or not their representations are true or untrue.  But

17   I understand what Your Honor is saying --

18            THE COURT:  Give them a little bit of room.  It's

19   easier that way because they -- their position is that goes

20   to commonality of the claim.  So if his --

21            MR. EICHEN:  I understand what their position is.

22   But, Your Honor, we look -- let's just say we'll give you

23   everything you asked.

24            THE COURT:  That's fine.  That's easy.

25            What other information -- they're going to give you

1   the history of what he recalls about maintenance of the

2   headlight and when he bought the car and whatever maintenance

3   he did with the headlights and to the best of his

4   recollection two years later.

5           Are there -- is there any other factual information

6   you're looking for from the plaintiff?

7           MS. EUN:  I think that along -- along the lines of

8   what Your Honor has described, we can go through our letter

9   again with them and try to get --

10          THE COURT:  Well, why don't -- I want -- I'm going

11  to take -- I'm going to give you a minute to talk and meet

12  and confer.

13          I'm going to make one other point.  I understand

14  that you want that information in advance.  But if you're

15  taking a -- Rule 26 empowers me to limit discovery when its

16  benefits outweigh its burden.  If you're going to take a

17  deposition anyway, and given how basic his knowledge is, his

18  knowledge is I bought a headlight.  That's all.  I bought it

19  at Walmart.  It wasn't as bright as I thought it would be.

20  That's the whole case.

21          So I'm not going to let -- I'm not going to require

22  them to -- to provide in written form everything you're going

23  to ask him at his deposition.  You're entitled to some

24  background so you can take his deposition, but actually, it's

25  not a very complicated deposition to take.  So it should be,

1   like, very -- they'll supplement that one interrogatory.  I

2   can't imagine what other information you need from this guy.

3           And as to the issue about the contention, I just

4   want the record to be clear, you can't ask a class plaintiff

5   to answer a contention interrogatories about the reliance on

6   representations of other putative class members.  That's not

7   a fact that's within his knowledge.  It's -- it's a point

8   that you can argue in your brief.  They can't rebut that.

9   They can't come back and say every single putative class

10  member relied on the representation.

11          So you -- that is not an appropriate thing to ask

12  him as a class member.  I mean -- unless I'm missing

13  something.  How can you ask Mr. Chaudhri what -- what the

14  reliance is on other class members?

15          MS. EUN:  We were merely asking them to give us the

16  support for the allegations they made in their complaint.

17  That's simply what we're asking for.

18          THE COURT:  Well, I'm not sure that there's an

19  allegation in the complaint that all the class members relied

20  on --

21          MS. EUN:  There actually is.

22          THE COURT:  Well, why don't you show me where in

23  the complaint it is.

24                  (Pause in proceedings)

25          THE COURT:  It's in paragraph 52 under the

 1   misrepresentation, the common law fraud claim.

 2                   (Pause in proceedings)

 3            MS. EUN:  Paragraph 41.

 4                   (Pause in proceedings)

 5            THE COURT:  Well, that's not 41.  41 is reliance.

 6   Reliance paragraph is in 52.

 7            You can certainly ask the plaintiff how he relied

 8   on the representations in his deposition.  That's a fair

 9   question.  Okay?

10            And I'm going to give you a few minutes to meet and

11   confer on the 30(b)(6), and then I'll come back and we'll

12   talk about revising the schedule.

13            FEMALE SPEAKER:  All rise.

14                   (Recess:  3:59 P.M. to 4:27 P.M.)

15            THE COURT:  Resolution has been reached.

16            MR. LIEBESMAN:  Well, Your Honor, there's --

17   there's been resolution on the matters which you asked

18   substantively, but as a result, there's a procedural issue

19   and a new substantive issue.

20            THE COURT:  Okay.

21            MR. LIEBESMAN:  I hate to bore you with this.

22            As it relates to the 30(b)(6) deposition, we've

23   agreed on the description of the individual or individuals

24   who will be produced under Rule 30(b)(6).  That's done.

25            As it relates to the documents, the information

 1   requested by the defendant of the plaintiff with respect to

 2   the vehicle, that information will be provided.

 3              THE COURT:  Okay.

 4              MR. LIEBESMAN:  The defendant has agreed,

 5   consistent with Your Honor's instruction, to provide us with

 6   a list of competitors by Monday, and we will follow through

 7   with Your Honor's instructions as to whether or not our

 8   consulting expert is an individual who works or worked at any

 9   of those competitors.

10              I think as a matter of substance, those are the

11   issues that were outstanding.

12              Here's the new problem as it relates to the

13   procedural part of this.  The question is timing.  We asked

14   when the defendants are going to at least, Your Honor,

15   substantially complete their document production.  Not

16   necessarily complete it before we take any depositions, but

17   can they tell us when they're going to be substantially

18   completed, because the last thing we want --

19              THE COURT:  Okay.  And what -- and what did he tell

20   you?

21              MR. LIEBESMAN:  They don't know.  And that they

22   withheld -- they intentionally withheld the production they

23   were going to make the other day so that they have something

24   ready, but now they're withholding documents until we resolve

25   the protective order, which they produced 1800 pages without

1   that.  Now they're withholding documents --

2            THE COURT:  Stop.  Let me give you a little bit of

3   a hint.  It doesn't help to be antagonistic, and your tone is

4   antagonistic.  We'll fix it.  It's not the kind of issue

5   can't be fixed.

6            MR. LIEBESMAN:  I mean, this is just -- this is

7   just what we've been dealing with.

8            THE COURT:  Okay.

9            MR. LIEBESMAN:  They want to hold to the

10  December 15th deadline, so these --

11           THE COURT:  But let me stop you.  And let me ask

12  them.  It's not an unreasonable request to say when can you

13  produce the documents.  I want -- I can give you an arbitrary

14  date.  I could say December 15th.  December 10th.  I really

15  prefer not to be arbitrary.  I like to work with lawyers if I

16  think that they're working with me.

17           So there's been this rolling production.  It's not

18  a crazy amount of documents.  When do you think you can get

19  them his documents by?  It's not an unreasonable position to

20  say I want to see all the documents before I take your dep.

21           MS. EUN:  I understand, Your Honor.  I -- and I can

22  tell you, as I told him, that I'm not prepared at this time

23  to say how -- actually what plaintiff's counsel asked me is

24  what percentage of documents we've produced to them.  And I'm

25  not prepared at this time to give them that answer.

1            But we -- we fully intend on producing all of the

2    documents by the end of the discovery period, by

3    December 15th.  And hopefully before that, if we can.  We are

4    working very hard to do that.

5            THE COURT:  Okay.  You have until December 15th to

6    produce every documents going in an order.  If you're

7    producing after that, then -- then there'll be sanctions.

8            MS. EUN:  Related to class certification.

9            THE COURT:  I want everything.  I don't want any --

10   all those documents that they've asked that they've

11   requested.  Okay.  We talked about some latitude with -- with

12   some merits discovery.

13           MS. EUN:  Right.

14           THE COURT:  And I hope that's what's going to be

15   produced.  And after all those documents are produced, then

16   you can take the 30(b)(6) deposition.

17           So, Mr. Liebesman, when do you want to take that

18   deposition?

19           MR. LIEBESMAN:  We have three firms.  We can review

20   documents --

21           THE COURT:  Do you want to take it before

22   Christmas?  Holidays?  New Year's?

23           MR. LIEBESMAN:  I'd like --

24           THE COURT:  December holidays or January?

25           MR. LIEBESMAN:  I'd rather take it before

1   Christmas, depending on that they don't dump, you know,

2   300,000 pages on us, which I don't think is going to happen,

3   but I'd like at least to have, I think, a day before

4   Christmas.  Just before Christmas.  If they're producing by

5   the 15th.

6            THE COURT:  Going to produce by the 14th, which is

7   a Friday.  And then -- I'm going to ask them to produce by

8   December 10th.  Okay?  And then I'm going to ask you to

9   schedule a deposition sometime the week of -- I'm going to

10  move it back a week till December 10th.  I don't think it's

11  fair to expect people to take depositions, unless they choose

12  to, on the week of the 24th or 25th or 26th this year.  So if

13  you produce them Monday the 10th, you can produce your

14  30(b)(6) witness on a mutually agreeable date the week of

15  December 17th.  Okay?

16           MR. LIEBESMAN:  That's fine, Your Honor, that week,

17  we're happy to accommodate that --

18           THE COURT:  Okay.  Okay.

19           What's the other issue?

20           Does that work for you guys?

21           MS. EUN:  Yes, Your Honor.

22           THE COURT:  Okay.  Good.

23           What's the next issue?

24           MR. LIEBESMAN:  During the course of the discussion

25  about the information the defendant wants of plaintiff with

1    respect to make, model, the vehicle, and all the maintenance

2    records, it sort of, you know, came to light the fact that

3    the defendant is going to be using that information to very

4    likely make an argument on individuality.  And they -- they

5    said it earlier.  So I had said to the defendants, that's

6    fine, we're going to give you that.  But, then, what we

7    should be entitled to are that same information for the

8    vehicles that you use to test to derive the information that

9    you put on the package that says nothing about this is

10   limited for any particular vehicle, any year, make, model,

11   anything.  That's a problem with a -- I'd say it's a quid pro

12   quo.  You want to go down that road, we're happy to do that.

13             THE COURT:  And what's their response?

14             MR. LIEBESMAN:  They refuse to produce the

15   documents.

16             MS. EUN:  That's not true, Your Honor.  This is

17   actually the first time that we're hearing this request.

18   It's the first time that -- yeah.

19             THE COURT:  Okay.  Well, here -- here -- here's

20   where you have to really -- the breakdown is.  You said -- I

21   heard for the first time when you explained why you wanted

22   all the maintenance and the -- the history of the car, it's

23   because light bulbs work differently in different cars

24   depending on maintenance, the make, the model, how they're

25   maintained.  Okay.  I get that.

1              And it's -- I see where you're headed.  It's going

2    to commonality; right?  So he's entitled -- if you can waive

3    that which you seem -- you sort of suggested that you are,

4    else you wouldn't be asking for the discovery, they're

5    entitled to know on these tests that you did, do they pertain

6    to any particular car?  That's a fair question.  If they

7    don't, it sort of cuts against your arguments that it's

8    different on different cars.  Right?

9              MS. EUN:  And to the extent that we have that

10   information, then we can give that to them.  It's just we

11   need to evaluate it because we're hearing about it for the

12   first time.

13             THE COURT:  Well, this -- I want the 30(b)(6)

14   wit- -- I want the 30(b)(6) witness to include that topic.

15             MS. EUN:  Okay, that's fine.

16             THE COURT:  Were the tests done on different types

17   of cars and do these recommendations differ with different

18   makes and types of cars.  That's what they -- you should be

19   prepared to have your 30(b)(6) witness testify that if what

20   you said earlier to me on the record is true, that you're

21   going to argue that it works dif- -- it's not common because

22   every car and every consumer's car and maintenance record is

23   different.

24             Okay?

25             MS. EUN:  That's fine.  But just because this is a

1    new request, these aren't documents that we've searched for

2    within the company.  And so we'd have to go back and conduct

3    that search, identify the appropriate custodians and so

4    forth, with regard to this new request.

5            THE COURT:  Well, I don't know exactly what the

6    request is.  But as I understand it from Mr. Liebesman, he

7    just wants to know if the tests that you're going to produce

8    and tell him about, if they are tied to any particular make

9    and model of a car.  That's should be in the report that

10   you're going to produce about the brightness, the three --

11   with the three adjectives.  If it dif- -- if it differs with

12   cars and maintenance, then you should turn that over.  It

13   shouldn't be this -- I don't want this to turn into -- listen

14   to me.  I don't want this turn into while this is a whole new

15   request, we hear it for the first time on the record, I can't

16   get it by December 10th, and therefore, when he takes his

17   30(b)(6) representative, I -- he's not going to -- we're

18   unable to produce those documents.

19           This is a pretty basic case; right?  So you've said

20   that it differs on different tests or cars.  He just wants to

21   know if your research that forms the basis for the marketing

22   on the labels was based on different makes and models of

23   cars.

24           Isn't that what you're asking for, Mr. Liebesman?

25           MR. LIEBESMAN:  Yes, Your Honor.

```
 1              THE COURT:  That's it.  If it wasn't, that's fine

 2   too.  And your -- and your 30(b)(6) witness should be

 3   prepared to talk about that.  The deposition's going to be a

 4   month from now.  You have plenty of time to prepare him or

 5   her, because what I don't want to be happen is after the

 6   deposition is taken, you have to take another deposition and

 7   then at motion practice you're going to argue it's different

 8   on different cars and he was precluded from an opportunity to

 9   take that discovery on -- on how it varies with different

10   cars.

11              MS. EUN:  I understand, Your Honor.

12              THE COURT:  Okay?  So anything else?

13              MR. LIEBESMAN:  Not from us.

14              THE COURT:  Okay.  What -- does there have to be

15   any adjustments to the deposition -- to the discovery

16   schedule?

17              MR. LIEBESMAN:  Well --

18              THE COURT:  After you get this -- take this --

19   you're going to take the deposition the week of

20   December 17th; right?  So that means you'll take it.  You're

21   going to meet and confer.  You're going to pick a mutually

22   convenient date for everybody.  If you can't agree, you

23   should agree on a reasonable place to take the deposition.

24   If you can, at someone's office in New Jersey.  If you can't

25   agree on that, then it comes to my courtroom.  So that's
```

1    December 17th to the 21st.

2              Do you need any other additional discovery?  Do you

3    want me to keep discovery open till, say, end of January?

4    Mid-January?  Something like that?  In case you have

5    follow-ups?

6              MR. LIEBESMAN:  Yes, Your Honor, absolutely.

7              THE COURT:  Okay.  Any -- anything that defendants

8    want to add?

9              MS. EUN:  That's fine, Your Honor.

10             THE COURT:  Okay.  Okay.  I will keep -- what dates

11   are you -- do you expect any other -- you're going to --

12   you're going to want to take the plaintiff's deposition;

13   right?

14             MS. EUN:  Yes, Your Honor.

15             THE COURT:  Okay.  And you haven't agreed on the

16   date for that.  You'll take that in January or December,

17   whatever you want.

18             MS. EUN:  Right.  We'll probably notice it for

19   January.

20             THE COURT:  Okay.  Is February 1 enough time?

21             MR. EICHEN:  Judge -- Judge, based on the 30(b)(6)

22   witness, keeping discovery open, can you -- you said

23   mid-January.  Can we have till the end of January?

24             THE COURT:  Sure.

25             MR. EICHEN:  Thank you.

1            THE COURT:  What I'm going to do is schedule

2    another -- I'll keep discovery open till February 15th.  And

3    we'll have another telephone conference February 13th at

4    3 o'clock.

5            Okay.  I'll do the scheduling order.  I'll keep it

6    open until February 15, in case there's any issues.  If there

7    are any continuing issues, send me letters, please try to

8    meet and confer in advance of the issues.  Okay?

9            If there -- what I'd like to do -- I'm going to add

10   this too.  Our telephone call will be February 13th at 3 P.M.

11   Two days in advance, by February 11th, I want a joint status

12   letter.  Okay?  If there's any major issues, we'll turn it

13   into an in-person conference.  I'm sensitive to the fact that

14   counsel are traveling.  So if there's nothing substantive, we

15   can do it by phone.  If there's issues, we'll convert it to

16   an in-person.

17           Thank you.

18           UNIDENTIFIED SPEAKERS:  Thank, Your Honor.

19            (Conclusion of proceedings at 4:36 P.M.)

20

21

22

23

24

25

1                          Certification

2          I, SARA L. KERN, Transcriptionist, do hereby certify

3     that the 54 pages contained herein constitute a full, true,

4     and accurate transcript from the official electronic

5     recording of the proceedings had in the above-entitled

6     matter; that research was performed on the spelling of proper

7     names and utilizing the information provided, but that in

8     many cases the spellings were educated guesses; that the

9     transcript was prepared by me or under my direction and was

10    done to the best of my skill and ability.

11         I further certify that I am in no way related to any of

12    the parties hereto nor am I in any way interested in the

13    outcome hereof.

14

15

16

17

18    S/ *Sara L. Kern*                    November 21, 2012

19    Signature of Approved Transcriber              Date

20

21
      Sara L. Kern, CET**D-338
22    King Transcription Services
      901 Route 23 South, Center Suite 3
23    Pompton Plains, NJ 07444
      (973) 237-6080
24

25