# EICHEN CRUTCHLOW ZASLOW & MCELROY, LLP
## ATTORNEYS AT LAW

BARRY R. EICHEN ⚖ §
WILLIAM O. CRUTCHLOW ⚖
DARYL L. ZASLOW ⚖
EDWARD MCELROY
CHRISTIAN R. MASTONDREA ‡
PAUL M. DA COSTA ◆
THOMAS PACIORKOWSKI ‡

40 Ethel Road
Edison, New Jersey 08817

Tel: (732) 777-0100
Fax: (732) 248-8273

www.newjerseymedmalattorney.com
www.njadvocates.com

AFFILIATE OFFICES
TOMS RIVER
RED BANK

March 12, 2013

**Via ECF & Regular Mail**
Hon. Madeline Cox Arleo, U.S.M.J.
United States District Court
Martin Luther King Jr. Federal Building & U.S. Courthouse
50 Walnut Street
Newark, NJ 07101

Re:   Chaudhri v. Osram Sylvania, Inc., *et al.*
      Civil Action No. 11-5504 (SDW) (MCA)

Dear Judge Arleo:

This firm serves as co-counsel for the Plaintiff in this consumer fraud, putative class action. On January 28, 2013 we wrote Your Honor seeking leave to file a motion to compel Sylvania to produce a prepared and responsive 30(b)(6) deponent to answer questions about the testing Sylvania relied on to establish the SilverStar packaging claims and to compel Sylvania to answer supplemental interrogatories related to that testing. Sylvania's sole 30(b)(6) designee, Director of Engineering, Fredrick Peterson, was unprepared to answer questions on those subjects at his December 21, 2012 deposition. An in-person hearing was scheduled for February 13, 2013. Adjourned at Sylvania's counsel's request, the hearing is now scheduled for March 22, 2013. I write to update the Court about recent events relating to Plaintiff's original requests.

### Sylvania Disavows Peterson's 30(b)(6) Testimony In its Responses To Plaintiff's Requests for Admissions

On January 24, 2013, Plaintiff served Requests for Admissions on Sylvania. Many of the Requests were based on the testimony of Mr. Peterson during his deposition. On February 28, 2013, Sylvania served its responses, disavowing Peterson's testimony.

### Request for Admission No. 7

Peterson testified that Sylvania performs lamp life testing at 12.8 volts:

Q. At what line voltage does Sylvania test Sylvania SilverStar head lamps?

> A. We test at two line voltages, 12.8 and 13.2.
>
> Q. Does Sylvania test lamp life at a higher voltage?
>
> A. We test our lamp lives at 12.8 volts.
>
> Q. Is the industry standard to test lamp life at a voltage of 14 volts?
>
> A. Not to my knowledge.

Fredrick Peterson Dep. 26:15-25, Dec. 21, 2012 (revised Feb. 4, 2013).

Based on Peterson's testimony, Plaintiff's Request for Admission No. 7 asked Sylvania to admit that "Sylvania performs lamp life testing at 12.8 volts on headlamps sold in the United States and not at 14 volts." Sylvania responded, "Sylvania denies this Request."

**Request for Admission No. 14**

Peterson testified that Sylvania standard halogen headlamps are equivalent to Sylvania OEM (original equipment manufacturer) halogen headlamps that are standard equipment in new vehicles:

> Q. Are the packaging claims comparing SilverStar [head]lamps to standard halogen head lamps?
>
> A. They are compared [] to aged standard halogen head lamps.
>
> Q. Which standard halogen head lamps, standard Sylvania head lamps or somebody else's?
>
> A. They would be our standard halogen head lamp.
>
> Q. Are Sylvania standard halogen head lamps equivalent to OEM bulbs in new cars?
>
> MR. BISHOP: Objection to the form.
>
> A. They are sold into the OEM market space.
> …
> Q. Could you take a look at the page that's been Bates stamped SYL-1133? Could you read the first paragraph at the bottom?
>
> A. This? The Sylvania standard product is made to the original OEM specifications and in nearly all cases made on the same equipment and in the same factories as the products going into new cars today.
>
> Q. Would you agree with that sentence?

> A. I agree with this sentence.

Fredrick Peterson Dep. 28:6-29:9, Dec. 21, 2012 (revised Feb. 4, 2013).

Based on Peterson's testimony, Plaintiff's Request for Admission No. 14 asked Sylvania to admit that "Sylvania standard halogen headlamps are equivalent to OEM halogen headlamps." Sylvania responded, "Sylvania denies this Request."

### Request for Admission No. 17

Peterson also testified that Sylvania standard halogen headlamps are expected to last at least three years or 36,000.[1]

> Q. Is it fair to say that Sylvania standard halogen bulbs are equivalent to OEM bulbs?
>
> MR. BISHOP: Objection to the form.
>
> A. Our Sylvania brand and halogen bulbs are what our customers purchase.
>
> Q. Is it fair to say those bulbs are expected to last for the warranty period of the car?
>
> A. Our OEM expects them to last three years, 36,000 miles. The lighting is covered under that bumper-to-bumper warranty.
>
> Q. Sylvania standard halogen bulbs are expected to last for three years or 36,000 miles?
>
> A. For the OEM warranty period.

Peterson Dep. 174:21-175:17, Dec. 21, 2012 (revised Feb. 4, 2013).

Based on Peterson's testimony, Plaintiff's Request for Admission No. 17 asked Sylvania to admit "Sylvania standard halogen headlamps are expected to last at least three years or 36,000 miles." Sylvania responded, "Sylvania denies this Request."

### Request for Admission No. 23

Peterson also testified that Sylvania does not test headlamps using actual vehicles. Rather, he testified, Sylvania removes the headlamp assemblies from the vehicles and performs tests using only the headlamp assemblies in a lab.

---

[1] This testimony is relevant to Plaintiff's claim that Sylvania knew its SilverStar headlamps had a substantially reduced product life compared to standard halogen headlamps and Sylvania knowingly omitted that material information from the SilverStar package while charging a premium for SilverStar headlamps over standard halogen headlamps.

> Q. Is it fair to say Sylvania, when they test distance measurements, take the head lamp assembly out of the vehicle and don't rely on the vehicle's power supply?
>
> A. When we take goniometric measurements we purchase a stand-alone lamp and set it at the standard voltages.
>
> Q. Sylvania does not test the distances with the head lamp assembly in that vehicle?
>
> A. That's correct. We test it as a stand-alone head lamp assembly.
>
> Q. Is that done all the time in that procedure you've just described?
>
> A. Our goniometric testing is always done on a stand-alone head lamp assembly.

Peterson Dep. 92:8-23, Dec. 21, 2012 (revised Feb. 4, 2013).

Based on Peterson's testimony, Plaintiff's Request for Admission No. 23 asked Sylvania to admit, "When Sylvania performs distance testing of headlamps, including SilverStar and standard halogen, it does not perform those tests using actual vehicles. Instead, Sylvania performs those tests using only the headlamp assembly from a vehicle." Sylvania responded, "Sylvania denies this Request."

### Request for Admissions Nos. 24 & 25

Peterson also testified that Sylvania does not have a testing facility available to perform headlamp distance testing using actual vehicles.

> Q. So, it's fair to say that Sylvania has the capability of testing head lamps in vehicles, but chooses to test head lamp assemblies outside of vehicles?
>
> A. We have the ability to light up a head lamp within a vehicle, but to measure it we measure it in a stand-alone facility. We don't have a lab available to do full head lamp testing on a stand-alone vehicles.
>
> Q. You would not be able to reproduce the Consumer Reports' tests of the vehicles they test on a road?
>
> A. That is correct.

Peterson Dep. 93:4-16, Dec. 21, 2012 (revised Feb. 4, 2013).

Based on Peterson's testimony, Plaintiff's Request for Admission No. 24 asked Sylvania to admit, "Sylvania does not have a testing facility able to perform headlamp distance testing using actual vehicles." Sylvania responded, "Sylvania denies this Request."

Also, based on Peterson's testimony, Plaintiff's Request for Admission No. 25 asked Sylvania to admit, "Sylvania does not have a testing facility able to recreate the tests conducted by Consumer Reports as described in the Consumer Reports article published in January 2006 and produced in IC 008-010." Sylvania responded, "Sylvania lacks sufficient information about the Consumer reports tests to know whether Sylvania has a testing facility able to recreate the tests conducted by Consumer Reports as described in the Consumer Reports article published in January 2006 and produced in IC 008-010."

### Request for Admission No. 27 – Head Lamp Assemblies

Peterson also testified that Sylvania did not test each SilverStar headlamp part number in a head lamp assembly.

> Q. How many head lamp assemblies did Sylvania test regarding the claims on the SilverStar package represented in this document Bates stamped IC001?
>
> A. I do not know the exact number of head lamp assemblies tested. As indicated, our normal quantity is three and five.
>
> Q. If the normal quantity of head lamp assemblies is between three and five and Sylvania produces more than ten different part numbers for head lamps for the SilverStar line, would you agree with me that Sylvania does not test each part number in a head lamp assembly?
>
> MR. BISHOP: Objection to the form.
>
> A. We do not test each part number in a head lamp assembly. That is correct.

Peterson Dep. 102:15-103:5, Dec. 21, 2012 (revised Feb. 4, 2013).

Based on Peterson's testimony, Plaintiff's Request for Admission No. 27 asked Sylvania to admit, "Sylvania did not test each SilverStar headlamp part number in a vehicle head lamp assembly." Sylvania responded, "Sylvania denies this Request."

In a letter dated February 4, 2013, Sylvania's counsel identified 11 vehicle headlamp assemblies "used to test each SilverStar headlamp part number." (See attached Ex. A). Counsel also identified only three documents in Sylvania's entire production related to headlamp assembly testing. Only one of those documents contained headlamp assembly testing data, SYL-37379. In light of the dearth of headlamp assembly testing data produced by Sylvania, Mr. Peterson's failure to review those documents in preparation for his 30(b)(6) deposition is unjustified. That failure is worse in light of Your Honor's specific instruction to Sylvania's counsel at the November 15, 2012 hearing to prepare the 30(b)(6) witness about headlamp assembly testing.

In a March 9, 2013 letter, Sylvania's counsel identified an additional 27 headlamp assemblies, bringing the total to 38 head lamp assemblies used to test SilverStar headlamps. (*See* attached Ex. B). Counsel did not identify or produce any additional headlamp assembly testing data to correlate to the additional headlamp assemblies that were identified. This 11th hour identification of additional headlamp assemblies long available to Sylvania, and the lack of correlating testing data, is unfairly prejudicial to the Plaintiffs. Sylvania's counsel represented to the Court at the last discovery hearing that Sylvania will oppose class certification based on the characteristics of Plaintiff's vehicle's headlamp assembly.

### Request for Admission No. 37 – Coil Luminance Measurement

On the front of SilverStar package, Sylvania represents that the SilverStar will have "up to 35%" more brightness than a standard halogen headlamp. But on the back of the package, in very small, fine print, Sylvania qualifies that claim with "[b]rightness comparison based on coil luminance measurements." Mr. Peterson testified that "coil luminance" can only be measured while the headlamp is outside of the vehicle headlamp assembly. Once the headlamp is installed in the vehicle headlamp assembly, the headlamp coil cannot be viewed and a "coil luminance" measurement cannot be obtained.

> Q. Is that coil luminance measurement taken when the lamp is in a headlight mechanism or outside of the vehicle?
>
> A. You have to measure coil luminance as standard light source.
>
> Q. Outside of the head lamp mechanism of the vehicle?
>
> A. Correct.
>
> Q. Does Sylvania expect it's head lamps to be operated outside of a head lamp mechanism by the consumer?
>
> A. Our light sources are utilized inside of a head lamp application.
> …
> Q. If coil luminance is to be taken or observed out of the head lamp, is it fair to say that the consumer would not be able to perceive the coil once it's inside the head lamp mechanism of the vehicle?
>
> A. The consumer would perceive the coil in downroad and side road visibility.
>
> Q. That would be what you describe as a correlation to coil luminance, but they would not be able to see the coil luminance measurement?
>
> A. They would not be able to measure lumens per square millimeter, correct.

Peterson Dep. 181:2:182:10, Dec. 21, 2012 (revised Feb. 4, 2013).

Based on Peterson's testimony, Plaintiff's Request for Admission No. 37 asked Sylvania to admit, "'Coil Luminance' as defined on the SilverStar package, cannot be measured while the SilverStar bulb is installed in a vehicle headlamp assembly." Sylvania responded, "Sylvania denies this Request."

### Request for Admission No. 41

Plaintiff purchased SilverStar 9004 headlamps. The "9004" is referred to as a part number. Peterson testified that every SilverStar part number cannot achieve the maximum of every "up to" claim on the front of the package.

> Q. Let's take a look at document Bates stamped IC001[2]. Is it fair to say that every part number does not experience all of the up to claims in each one of the icons on the package?
>
> MR. BISHOP: Objection to the form.
>
> A. It's fair to say that every product number within a specific family does not experience the complete up to claims.

Peterson Dep. 218:23-219:6, Dec. 21, 2012 (revised Feb. 4, 2013).

Based on Peterson's testimony, Plaintiff's Request for Admission No. 41 asked Sylvania to admit, "Every SilverStar headlamp part number will not achieve the maximum of all of the "up to" claims on the front of the SilverStar package. Sylvania responded, "Sylvania denies this Request."

### Sylvania Has The Burden of Establishing What Substantiation It Relied On For Its SilverStar Packaging Claims and Plaintiff's Supplemental Interrogatories Seek to Identify That Information

"For an advertiser to have had a 'reasonable basis' for a representation, it must have had some recognizable substantiation for the representation prior to making it in an advertisement." *FTC v. Direct Mktg. Concepts, Inc.*, 569 F.Supp.2d 285, 298 (D.Mass.2008) (citations omitted). "Defendants have the burden of establishing what substantiation they relied on for their product claims." *FTC v. QT, Inc.*, 448 F.Supp.2d 908, 959 (N.D.Ill. 2006). Sylvania, not the Plaintiff, bears the burden of establishing on what Sylvania relied for its SilverStar packaging claims.

Plaintiff's supplemental interrogatories (attached as Ex. C) are narrowly tailored to identify the basis for the SilverStar packaging claims. For example, Supp. Interrogatories nos. 1 and 2 ask Sylvania to identify the headlamp assemblies it tested. Mr. Peterson testified that Sylvania only tested between three and five headlamp assemblies, admitting some SilverStar part

---

[2] IC001 is a copy of the SilverStar package Plaintiff purchased.

numbers were never tested in headlamp assemblies. Sylvania rejected Mr. Peterson's testimony in response to Plaintiff's request for admission no. 27. Sylvania's counsel then produced a letter dated February 4, 2013, identifying 11 vehicle headlamp assemblies used for testing. On March 9, 2013, Sylvania's counsel identified an additional 27 headlamp assemblies without identifying or producing any correlating testing data. These interrogatories seek to identify, once and for all, the headlamp assemblies Sylvania tested.

Supp. Interrogatory no. 3 asks Sylvania to identify the headlamp bulbs it tested in each headlamp assembly and to identify the testing results. Sylvania's counsel has represented to the Court that Sylvania intends to oppose class certification based on the characteristics of Plaintiff's vehicle. Responses to interrogatories nos. 1-3 are needed to show that Plaintiff's SilverStar experience is not exceptional.

Supp. Interrogatory no. 4 seeks to identify each SilverStar part number distributed during the class period. This information is needed to properly define the class.

Supp. Interrogatory no. 5 seeks to identify any manufacturing modifications made to either SilverStar or standard halogen headlamps during the class period and any resulting changes in any performance characteristics. This information is needed because Mr. Peterson was presented with testing data during his deposition that was obtained from tests conducted by Sylvania's senior engineer. That data showed that for the majority of part numbers, Sylvania standard halogen headlamps outperformed SilverStar when comparing a new standard halogen to a new SilverStar. (*See* Def. Ex. A, ECF No. 57.1 at 7-13).

Presented with this testing data, Mr. Peterson - Sylvania's Director of Engineering and chosen 30(b)(6) designee - claimed he was unable to determine whether the testing was of bulbs available to consumers or prototypes. (*Id.* at 7, Peterson Dep. 61:21-24, "I cannot tell from the data if we were trying to do DOEs (design of experiments) on the SilverStar or Ultra or both of those product lines."). If Sylvania's Director of Engineering cannot determine from Sylvani's own documents if the testing data represents tests of retail product available to consumers or prototypes not available to consumers, Plaintiff and his counsel surely cannot.

Supp. Interrogatory no. 6 seeks to identify the data Sylvania relied on to support the SilverStar packaging claims. Sylvania has still not identified specifically the data on which it based its packaging claims.

Supp. Interrogatory no. 7 seeks to identify the calculations Sylvania used to arrive at its packaging claims. Mr. Peterson testified that Sylvania relied on both actual testing and calculations to arrive at the packaging claims. Peterson Dep. 130:21-131:3, Dec. 21, 2012 (revised Feb. 4, 2013)("Q. Does Sylvania perform actual distance testing measurements using worn standard halogen bulbs or does it rely on calculations when it determines the distance that a standard halogen bulb will project down the road? A. We have, in the past, done a combination of both.").

Supp. Interrogatory no. 8 seeks to identify the documents relied upon during the Sylvania aftermarket weekly meeting for the statement in the meeting minutes (SYL-1194) that "Marketing requested lumen degradation info (light bulbs dim over time by 20% or more). Craig gathering info, but the message basically was that most halogen bulbs will dim about 10% or so, then hold that until they blow out." (See Def. Ex. A, ECF No. 57.1 at 17, Peterson Dep.105:18-24).

Mr. Peterson testified that he attended that meeting. He also testified that he is unable identify the documents to which the meeting minutes refer. Plaintiff's counsel has been unable to identify those documents in Sylvania's production. That weekly meeting took place in the middle of 2009, more than a year after Sylvania started selling SilverStar product with the packaging Plaintiff purchased. Those meeting minutes contradict the disclaimer on the back of the SilverStar package that "headlamps dim over time by 20% or more." If the disclaimer is false, the claims on the front of the package that rely on the disclaimer are also false. This interrogatory is needed to identify the basis for that statement.

Supp. Interrogatory no. 9 seeks to identify the basis for the disclaimer on the back of the SilverStar package that "headlamps dim over time by 20% or more."

Supp. Interrogatory no. 10 seeks to identify which vehicles are capable of achieving the claims on the SilverStar package. Plaintiff is entitled to this information to show that Plaintiff's SilverStar experience is not uncommon to rebut Sylvania's promised opposition to class certification based on the characteristics of Plaintiff's vehicle.

Violating Rule 30(b)(6) and this Court's express instruction, Sylvania produced an unprepared witness in response to Plaintiff's 30(b)(6) Notices. Sylvania should be compelled to produce another 30(b)(6) witness to answer questions about the testing and marketing related to the SilverStar packaging claims and to provide responses to Plaintiff's Supplemental Interrogatories.

Respectfully submitted,

Barry R. Eichen, Esq.

cc: Brant Bishop, *counsel for defendants*

Enclosures:

Ex. A, Letter dated February 4, 2013 from Sylvania's counsel identifying 11 headlamp assemblies

Ex. B, Letter dated March 9, 2013 from Sylvania's counsel identifying 27 additional assemblies

Ex. C, Plaintiff's proposed Supplemental Interrogatories