# EXHIBIT C

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| IMRAN CHAUDHRI, individually, and on behalf of himself and all others similarly situated,<br><br>      Plaintiff,<br><br> v.<br><br>OSRAM SYLVANIA, INC., and OSRAM SYLVANIA PRODUCTS, INC.,<br><br>      Defendants. | CASE NO. 2:11-CV-05504-SDW-MCA |

**PLAINTIFF'S SECOND SET OF INTERROGATORIES TO DEFENDANTS**

  **PLEASE TAKE NOTICE** that Plaintiff, Imran Chaudhri, individually and on behalf of others similarly situated, demands that Defendants give certified answers to the following interrogatories within 30 days after service in the manner prescribed by court rules, and further demands the supplement and amendment of said answers.

## I. DEFINITIONS

1. "Sylvania" means the named defendants and/or any or all of their predecessors, successors, parents, subsidiaries, divisions, affiliates, or anyone acting or purporting to act on their behalf, including any of its respective directors, officers, managing agents, agents, employees, attorneys, accountants, or other representatives.

2. The term "communications" refers to any exchange of information by any means of transmission, including, but not limited to, face-to-face conversations, mail, electronic mail, telegram, overnight delivery, telephone, facsimile or telex.

3. The term "documents" means documents whether fixed in tangible medium or electronically stored on disk or tape. The word "documents" shall include, by way of example and not by way of limitation, all of the following: papers, correspondence, trade letters, envelopes, memoranda, telegrams, cables, notes, messages, reports, studies, press releases, comparisons, books, accounts, checks, audit and video recordings, pleadings, testimony, articles, bulletins, pamphlets, brochures, questionnaires, surveys, charts, newspapers, calendars, desk calendars, pocket calendars, lists, logs, publications, notices, diagrams, instructions, diaries, minutes of meetings, corporate minutes, orders, resolutions, agendas, memorials or notes or oral communications, whether by telephone or face-to-face, contracts, agreements, drafts of or proposed contracts or agreements, memoranda of understanding, letters of intent, deal memoranda, transcriptions of audio or video recordings, computer tapes, computer diskettes or disks, or any other tangible things on which any handwriting, typing, printing, photo-static, electronic or other form of communication or information is recorded or reproduced, together with all notations on any of the foregoing, all originals, file copies or other unique copies of the foregoing and all versions or drafts thereof, whether used or not.

4. The following rules of construction shall apply to all discovery requests:
    (a) All/Each. The terms "all" and "each" shall be construed as "all and each";
    (b) And/Or. The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope; and

        (c)        The use of the singular form of any word includes the plural and vice versa.

5.        The term "person" means any individual, corporation, partnership, firm, association, government agency or other organization recognizable at law, and its agents and employees.

6.        The term "concerning" means relating to, referring to, describing, evidencing, or constituting.  Requests for documents "concerning" any subject matter include documents concerning communications regarding that subject matter.

7.        If a term used in a request is not defined in the "Definitions" section of Plaintiff's Request for Interrogatories, then the term shall have the same meaning as defined in any standard American English dictionary.

**II.     INSTRUCTIONS**

1.      Pursuant to Local Rule 33.1(b), if the person who verifies the answers to interrogatories does not have personal knowledge of the information contained in the answers, that person shall, for each answer not verified by personal knowledge, identify the person or persons from whom the information was obtained or, if the source of the information is documentary, provide a full description including the location thereof.

2.      If you claim the attorney-client privilege or any other privilege or work product protection with respect to any answer to an interrogatory, provide a detailed privilege log that contains at least the following information for each document that you have withheld:
   (a) state the date of the document;
   (b) identify each and every author of the document;
   (c) identify each and every person who prepared or participated in the preparation of the document;
   (d) identify each and every person who received the document;
   (e) identify each and every person from whom the document was received;
   (f) state the present location of the document and all copies thereof;
   (g) identify each and every person having custody or control of the document and all copies thereof; and
   (h) provide sufficient information concerning the document and the circumstances thereof to explain the claim of privilege or protection and to permit the adjudication of the propriety of such claim.

3.      These interrogatories shall be deemed to be continuing in nature so that if you subsequently discover or obtain possession, custody or control of any document, information or knowledge previously requested or covered by these interrogatories, you shall promptly supplement your responses hereto.

### III. INTERROGATORIES

1. Identify the vehicle headlamp assemblies Sylvania tested before Sylvania began distributing SilverStar with the packaging plaintiff purchased (IC 001-IC 002). Identify:
    - (a) vehicle make,
    - (b) model,
    - (c) model year,
    - (d) location of the assembly on the vehicle (passenger or driver side), and
    - (e) the manufacturer part number.

2. Identify the vehicle headlamp assemblies Sylvania tested after Sylvania began distributing SilverStar with the packaging plaintiff purchased (IC 001-IC 002). Identify:
    - (a) vehicle make,
    - (b) model,
    - (c) model year,
    - (d) location of the assembly on the vehicle (passenger or driver side), and
    - (e) the manufacturer part number.

3. For each vehicle headlamp assembly identified in Interrogatory nos. 1 and 2, identify the following:
    - (a) the SilverStar and standard halogen headlamp part numbers tested using the vehicle headlamp assembly;
    - (b) whether the SilverStar or standard halogen headlamp part number tested was a prototype (i.e. not available for sale to consumers) or whether it was available for sale to consumers;
    - (c) the date each test performed;
    - (d) who performed each test;
    - (e) describe how each test was performed with enough detail to enable a recreation of the test by an independent laboratory to authenticate the test results; and

    (f) the results of each test including but not limited to results related to: brightness, lumen output, down road distance, side road distance, lumen degradation/lumen maintenance, and lamp life.

4. Identify each SilverStar headlamp part number distributed by Sylvania during the class period (September 22, 2005 to present) and identify the time periods those part numbers were distributed.

5. For each SilverStar and standard halogen head lamp part number distributed by Sylvania during the class period (September 22, 2005 to present) identify:
    (a) each modification to the head lamp which caused a performance characteristic change (i.e. brightness, lumen output, down road distance, side road distance, and lamp life);
    (b) the dates during which the part number was distributed by Sylvania with those modifications;
    (c) the dates during which the part number was available to consumers with those modifications;
    (d) the performance characteristic changes that resulted from the modification including but not limited to: brightness, lumens output, down road distance, side road distance, and lamp life;
    (e) the rated lamp life. If the lamp life has changed during the class period (September 22, 2005 to present) for any identified part number, identify the time periods during which the rated lamp life is applicable; and
    (f) the basis for the rated lamp life (e.g. B3, B10, B50).

6. For the SilverStar package Plaintiff purchased (IC 001 – IC 002), identify with specificity the data relied upon by Sylvania to create the following package claims:
    (a) up to 35% increased brightness;
    (b) up to 30% increased down road distance;
    (c) up to 35% increased side road distance; and
    (d) headlamps dim over time by 20% or more.

7. For the SilverStar package Plaintiff purchased (IC 001 – IC 002), identify with specificity the calculations used by Sylvania to create the following package claims:
    (a) up to 35% increased brightness;
    (b) up to 30% increased down road distance;
    (c) up to 35% increased side road distance; and
    (d) headlamps dim over time by 20% or more.

8. Provide the following information related to the August 21, 2009 Weekly Aftermarket Meeting minutes (SYL-1194, "Marketing requested lumen degradation info (light bulbs dim over time by 20% or more). Craig gathering info, but the message basically was that most halogen bulbs will dim about 10% or so, then hold that until they blow out."):
    (a) Identify and produce the information gathered by Craig Landcastle;
    (b) Identify the information relied upon to make the statement, "the message basically was that most halogen bulbs will dim about 10% or so, then hold that until they blow out."; and
    (c) Indentify the person who recorded the meeting minutes.

9. For each part number identified in Answer to Interrogatory No. 4, identify the lumen degradation / lumen maintenance for SilverStar and Sylvania standard halogen headlamps. If the lumen degradation / lumen maintenance has changed during the class period (September 22, 2005 to present) for any identified part number, identify the time periods during which the results are applicable.

10. Identify every vehicle (including the make, model, and year) capable of achieving the maximum of every "up to" claim on the SilverStar package Plaintiff purchased (IC 001 – IC 002), including: 35% increased brightness; 30% increased down road distance; and 35% increased side road distance:

(a) comparing a new SilverStar at 100% light output to a standard halogen at 80% light output; and

(b) comparing a new SilverStar at 100% light output to a standard halogen at 100% light output.

Dated: March 12, 2013     /s/ Barry R. Eichen
Barry R. Eichen
Thomas Paciorkowski
EICHEN CRUTCHLOW ZASLOW & McELROY, LLP
40 Ethel Road
Edison, NJ 08817
Telephone: (732) 777-0100
beichen@njadvocates.com
tpaciorkowski@njadvocates.com

John Keefe
Stephen G. Grygiel
Keefe Bartels, L.L.C.
170 Monmouth Street
Red Bank NJ 07701
Telephone: (732) 224-9400

*Attorneys for Plaintiff Imran Chaudhri*