```
                         UNITED STATES DISTRICT COURT
                            DISTRICT OF NEW JERSEY


   CHAUDHRI,                            .
                                        .
         Plaintiff,                     .
                                        .  Case No. 11-cv-05504
   vs.                                  .
                                        .  Newark, New Jersey
   OSRAM SYLVANIA, INC., et al.,        .  May 3, 2013
                                        .
         Defendants.                    .
                                        .


                           TRANSCRIPT OF HEARING
                  BEFORE THE HONORABLE MADELINE COX ARLEO
                       UNITED STATES MAGISTRATE JUDGE


   APPEARANCES:

   For the Plaintiff:      JOHN E. KEEFE JR., ESQ.
                           Keefe Bartels
                           170 Monmouth Street
                           Red Bank, NJ 07701
                           (732) 224-9400

                           THOMAS PACIORKOWSKI, ESQ.
                           Eichen Crutchlow Zaslow & McElroy, LLP
                           40 Ethel Road
                           Edison, NJ 08817
                           (732) 777-0100
                           Email: Tpaciorkowski@njadvocates.com


   For the Defendants:     BRANT W. BISHOP, ESQ.
                           Kirkland & Ellis LLP
                           655 Fifteenth Street, N.W
                           Washington, D.C. 20005-5793
                           (202) 879-5067
                           Email: Brant.bishop@kirkland.com
```

```
 1
 2    Audio Operator:

 3    Transcription Service:      KING TRANSCRIPTION SERVICES
                                  901 Route 23 South, Center Ste. 3
 4                                Pompton Plains, NJ 07444
                                  (973) 237-6080
 5
      Proceedings recorded by electronic sound recording; transcript
 6    produced by transcription service.

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1              (Commencement of proceedings at 11:31 A.M.)
 2
 3              THE COURT:  -- discovery issues and help me if I
 4     say the plaintiff's name incorrectly.  Is it Chaudhri?
 5              MALE SPEAKER:  That's right.
 6              THE COURT:  Chaudhri versus Osram Sylvania.  Can I
 7     have appearances, please?
 8              MR. KEEFE:  Good morning, Your Honor, John Keefe
 9     Jr., Keefe Bartels, Red Bank, on behalf of the plaintiff.
10              THE COURT:  Okay.
11              MR. PACIORKOWSKI:  And Tom Paciorkowski with Eichen
12     Crutchlow Zaslow & McElroy on behalf of the plaintiff.
13              THE COURT:  Okay.  Everyone have a seat.
14              We have a number of issues raised by the plaintiff,
15     and then earlier this month, we had -- last month some issues
16     raised by the defendants about the plaintiff and the
17     inspection of the car.
18              I'd like to begin with the plaintiff's issues that
19     were briefed first.  And the main issue that was raised with
20     me -- I'm sorry, Mr. Keefe, you're going to tell me
21     everything's resolved, aren't you?
22              MR. KEEFE:  I'm going to -- not quite, but I'd like
23     to maybe --
24              THE COURT:  Sure, go ahead, why don't you start,
25     then.
```

```
 1              MR. KEEFE:  Okay.  And I'm sorry to interrupt
 2   you --
 3              THE COURT:  That's no problem.
 4              MR. KEEFE:  Okay.  Judge, last week --
 5              THE COURT:  Last night.
 6              MR. KEEFE:  Nope.  Last week -- we'll start last
 7   week, and then we'll make our progress through this morning,
 8   but last week we had an opportunity to meet in New York with
 9   my -- my partner and Mr. Paciorkowski and defense counsel and
10   his colleagues.  We -- we had a good talk, and as a result of
11   going back and forth with our clients, we were able to narrow
12   some issues.
13              THE COURT:  Okay.
14              MR. KEEFE:  And I'm sorry we couldn't do it
15   earlier.
16              THE COURT:  It's okay.
17              MR. KEEFE:  But we -- we did have a productive
18   meeting.
19              The primary issues before Your Honor that are our
20   issues is the interrogatories and the redeposition of
21   Mr. Peterson.  We're going to withdraw the Peterson
22   application before Your Honor to redepose him and reserve our
23   rights on the merits.
24              We are going to narrow the scope of our request on
25   supplementary [sic] interrogatories.  We've narrowed it to
```

1  only supplementary Interrogatory 1, 4, and 10.  Okay.
2           THE COURT:  Let me ask you a question, do
3  defendants still oppose Supplemental Interrogatories 1, 4,
4  and 10?
5           MR. BISHOP:  Yes, Your Honor, although we recognize
6  this is a much more reasonable scope.
7           THE COURT:  Yeah, it sounds like I'm -- you know,
8  there's been a whole history here, but, withdraw -- you know,
9  the supplemental interrogatories sort of went hand in hand
10 with the redeposition.  So if I'm hearing that they're
11 withdrawing right now their request to redepose the 30(b)(6)
12 witness who, for me appeared to not be fully prepared, given
13 that it was a broad 30(b)(6) request, but still there was a
14 lot of "I don't have the data" answers, that to narrow down
15 the three interrogatories, if the basis of the objection is
16 just it's beyond the scope of the rules, I can tell you,
17 unless you tell me how burdensome it would be, I would be
18 inclined to require you to answer those three
19 interrogatories.
20          MR. BISHOP:  Understood.  And I don't think there's
21 any need for me to argue the issue.
22          THE COURT:  I don't either.
23          MR. BISHOP:  There are some complications in how
24 we'll have to answer it.  But I take Your Honor's direction.
25 I don't think there's --

```
 1              THE COURT:  Okay.  So I want you to take a good --
 2   make a good-faith effort to answer those three
 3   interrogatories.
 4              Okay.  What else is on the agenda?
 5              MR. KEEFE:  Then the -- the other issue,
 6   Mr. Bishop's issues, we were not able to resolve on the
 7   inspection of plaintiff's vehicle.  That remains before
 8   Your Honor.  And I'll let Mr. Bishop address that or you can
 9   address that as you see fit.
10              The other issue, which was the kind of motion to
11   extend discovery, because we've been able to --
12              THE COURT:  I'm happy to extend discovery.  You
13   don't need motions on that.  You tell me what time you need
14   and we'll redo the schedule.
15              MR. KEEFE:  Okay.  Then -- then I'll let that sit
16   for the moment, and before we get to the substantive issue of
17   Mr. Bishop, and then I'll sit down.  The last thing is we'd
18   like to advise Your Honor that depending on how today went,
19   Mr. Bishop and I have agreed to meet to present to the Court
20   a full briefing schedule on class certification.  And we kind
21   of know, at least where we're headed --
22              THE COURT:  Okay.
23              MR. KEEFE:  -- and the time frame.  I see no reason
24   why we couldn't meet and get back to you certainly within two
25   weeks, the plaintiffs, to meet if we can --
```

```
 1                THE COURT:  Not a problem.
 2                MR. KEEFE:  -- next week.  Okay?  All right.
 3                THE COURT:  Let's talk -- as long as you're
 4   standing, Mr. Keefe, let's talk a little bit about the
 5   vehicle, because I will tell you my reaction to the vehicle
 6   issue.  Right?  So there's some -- I went back to the
 7   complaint, because you always go back to the complaint to
 8   understand the claims, and there's a part of -- there's a
 9   component of this case that talks about the fact that the
10   disclaimer information is in small print on the back, in and
11   of itself is misleading and -- and a violation of the
12   Consumer Fraud Act amongst other things.
13                But you also have a claim that -- and I'm looking
14   at page 8 of your brief, under the consumer -- some of the
15   core facts and legal claims, whether Sylvania possesses
16   competent and reliable scientific evidence to support their
17   packaging label advertising claims made regarding the
18   products at issue herein.
19                So you have a case where you have a plaintiff and
20   he's going to be the representative -- I take it, you only
21   have one plaintiff, right?  So --
22                MR. KEEFE:  We have one plaintiff -- yes.
23                THE COURT:  You have one plaintiff right now.  And
24   so he's going to say -- I'm not sure what he's going to say,
25   but I'm sure he's going to say arguably it was misleading, I
```

1  was misled, and from what I gather from the papers, my
2  perception was that in my car, this headlight was dimmer;
3  right?  Not as bright, whatever the three -- the three
4  categories.
5           So there's all kind -- I read the 30(b)(6).  And
6  there's all kind of testimony about how did -- how did it
7  relate -- how it relates to the halogen, 80 percent of the
8  hal- -- regular standard halogen bulb, how the testing is
9  done in different cars, although I couldn't really get a
10 sense of whether it was actually done in different cars, and
11 how there could be variations, depending on the model,
12 depending on the cars, all that stuff.
13          So I hear you that the claim is they tested it and
14 they didn't test it on different cars, apparently.
15          MR. KEEFE:  Right.
16          THE COURT:  They just tested it in a laboratory,
17 and it wasn't as bright or it was -- you know, the test
18 didn't conform with what they put on the label.  But we now
19 are in a class action, and they are now going to say -- they
20 want to challenge his perception, because -- let me say it
21 differently.  If this plaintiff had taken the bulb and given
22 it to you and you had it tested in a lab and the lab said,
23 you know, it's the -- it's the same as a halogen bulb and
24 that's what we base our -- our claim on, he based his claim
25 on perception of when he was driving, right, that's his

1  claim.  You didn't do any independent scientific testing like
2  they did on the bulb.
3          So in the -- in the context of discovery, aren't
4  they entitled to look at car?  It may -- it may not come in
5  and be relevant, but if they want to say in this
6  particular -- they could test the bulb, the bulb's still in
7  the car; correct?
8          MR. PACIORKOWSKI:  No -- no, it isn't, Your Honor.
9  The bulb actually burned out within a short period of time.
10         THE COURT:  And he didn't save it.  He didn't
11 retain it; right?
12         MR. PACIORKOWSKI:  He didn't retain it.
13         MR. KEEFE:  No.  No.
14         THE COURT:  So it's his whole claim, because,
15 remember, I get the bigger picture, but you still have a
16 plaintiff who has to have a case in controversy.
17         MALE SPEAKER:  Right.
18         THE COURT:  And this particular plaintiff is
19 saying, I don't have the bulb, but it was my perception that
20 it wasn't as bright as it should have been.
21         MR. KEEFE:  It didn't last as long and other
22 things.
23         THE COURT:  Right.
24         MR. KEEFE:  Yes.
25         THE COURT:  So in Rule -- you know, scope of

1  discovery, Rule 26, reasonably calculated, shouldn't they be
2  able to examine the car that held the bulb?  Wouldn't that be
3  extraordinary to tell me that you have it, they'll pay for
4  it, there's no burden, to -- at least examine it, and -- and
5  proffer whatever conclusions, because if you're right that
6  it's independent of the car, that's not going to carry the
7  day, but to not let them in a Rule 26 context on a relevancy
8  grounds, I'm concerned that that's really a stretch.  And I
9  hear what your claims are, but I'm trying to look at the
10 whole Rule 26 picture.
11          MR. KEEFE:  We certainly pondered the question that
12 Your Honor posed, correctly.  And we've given you what may be
13 the -- the, you know, the bifurcation of merits and procedure
14 still kind of --
15          THE COURT:  Merits and damages?
16          MR. KEEFE:  Mer- -- well, no, merits and class
17 certification.
18          THE COURT:  Okay.
19          MR. KEEFE:  But that type of bifurcation.
20          THE COURT:  Okay.
21          MR. KEEFE:  And as we look at this issue, what we
22 are really arguing is one of relevance.  Number one -- and I
23 think, should this inspection take place, we're going to be
24 very critical of the use of any information or data from it,
25 because number one, they've never tested vehicles, this

1  vehicle is much older, the bulb isn't there, what -- what
2  benefit we get out of it or they get out of it, I think is
3  a -- you know -- and I hear you, it's a merits issue.  But
4  there are -- there are so many things that would lend this
5  inspection to yield next to nothing that that's the basis of
6  our opposition.
7           I hear Your Honor to say, you know, it's Rule 26
8  discovery.  Clearly, we acknowledge they're entitled to take
9  the class representative's deposition.  And, you know, our
10 opposition is we just think this is, you know, so far afoul
11 of they haven't tested other vehicles, now they want to test
12 this guy's vehicle, that it's so far afoul of -- this vehicle
13 is now so many years down the road, it's in a different
14 condition, we don't have the bulb, that that was our basis
15 for -- for saying, you know, we understand the Rule 26
16 discovery, but there's just nothing that's going to come up
17 that's of any merit.
18          And -- and the response may be, well, you can argue
19 that later after the inspection, let's see what they do with
20 it, if anything.
21          So certainly appreciate the argument.
22          I'm sorry.
23          THE COURT:  That's okay, take your time.
24          MR. KEEFE:  The other issue that counsel advised me
25 of and I trust that was in our brief, the -- we served demand

1  for admission, and the bulb is admitted by the defendant to
2  not have met the testing requirements.  So the question
3  becomes if -- if we have that issue and you've admitted that
4  the tests -- that the bulb doesn't meet the packaging
5  representations, then what possibly for purpose of class
6  certification do we need to look at an old car without the
7  bulb of clearly limited value?
8           So I think the totality of everything here, one
9  would say, well, discovery's fairly broad and class
10 certification as to the representative, but our -- I think
11 our opposition to this shows that there is no merit.  And the
12 demand for admissions, as my colleague just pointed out to
13 me, demonstrates that this bulb used by this plaintiff, which
14 we no longer have, in an older vehicle, doesn't meet the
15 labeling requirements, which is kind where the class
16 certification issue is headed.
17          So that's the basis of our population.  We
18 certainly palpated the tension in the issue with Rule 26
19 discovery, but we don't think there's any merit to it.
20          THE COURT:  Okay.
21          Counsel?
22          MR. BISHOP:  Yeah, I -- Your Honor, I think you
23 correctly understand the issue.  From my perspective, their
24 objection boils down to a burden outweighing the rel- -- the
25 potentially probative value of the evidence argument.

1          But truly, there's no real burden because we're
2    going to pay for the inspection.  The car's not --
3          THE COURT:  Let me ask you a question.  What --
4    what can you possibly -- I hear you, Rule 26 is broad.  But
5    here's the point:  The bulb's gone.  It's about the bulb.
6    You never tested anything in a laboratory.  You never tested
7    different cars.  You never gave any data that says old cars,
8    be careful with old cars, they -- electrical systems.  An
9    older car, it may not work as well in an older car as a
10   brand-new car.  You did none of that.  And you never did a
11   testing on a car, ever.
12         So why now, the first time you're going to test a
13   car is when you got a class-action plaintiff ahead of you, to
14   arguably say this car was old and the electrical system was
15   failing, therefore, he's not representative of the class when
16   your own data, you never made any distinction with car type.
17   There's nothing -- if you could show me something in the
18   warning or anything to the consumer that gives any indication
19   to the consumer about the car.
20         MR. BISHOP:  Well, Your Honor, I'm trying to find
21   the location of the -- of the packaging which is Exhibit A to
22   the complaint, and it says -- I won't get the words right,
23   but it says actual performance may vary by product type,
24   vehicle model and usage.
25         So on the packaging, there is -- there is a notice

1   that there could be variation based on the model of the car.

2           To this -- to the point at issue now, we have a
3   class certification motion that we will have to address with
4   this -- with this plaintiff as the class -- as the
5   representative.

6           In his complaint, as Your Honor pointed out in
7   paragraph 30, he made his perception the test of it not
8   complying with the claims.  We don't have the original bulb.
9   But there could be several explanations for why -- for what
10  accounts for his perception, some of which could be the bulb,
11  some of which could be the condition of his car, the
12  electrical system, the aim, other problems.  Now, it's
13  possible that they'll have counterarguments to whatever we
14  find in the inspection, but that ultimately, I think, will go
15  to the weight to be given to whatever evidence is presented,
16  not to the question of whether this is potentially leading to
17  relevant evidence.

18          THE COURT:  Do you have -- do you have any -- using
19  your own words, model of car, do you have any data that
20  talk -- that tested in different models of cars?

21          MR. BISHOP:  Well, there's various -- there's
22  various bulb models.  For example, in this case, the 9004 is
23  the designation for a model.  There's also a 9006, a 9007.  A
24  9004 could be used in various different car types.  When the
25  9004 was tested, it would have been tested in a collection of

1  a few different headlight assemblies, not in a car in the
2  garage, but the assembly that is used on that car and then
3  the light bulb is inserted into it.  So there is variation in
4  the car headlight assemblies that are used.
5          THE COURT:  Well, why don't you just then agree to
6  inspect the headlight assembly?
7          MR. BISHOP:  Because what can account for the --
8  the variation in how bright the bulbs are is not just the
9  headlight assembly, but the condition of the car's electrical
10 system.  It could include the alignment of the car, which
11 might result in the headlight aim being at a less than
12 optimal position so that the reflectors are not taking full
13 advantage of whatever the capacities of the bulb are.
14          So all of these issues are possible responses to
15 whatever we find from the car inspection, which may be little
16 or may be much.  And these are arguments that they can make
17 about the weight that should be accorded to this evidence.
18 But I don't think that they're proper arguments to prevent us
19 from finding the evidence in the first place.
20          THE COURT:  And how -- how long ago was -- was this
21 light bulb utilized?  How much time has passed?
22          MR. PACIORKOWSKI:  Back in 2009, Your Honor.
23          THE COURT:  Okay.  I think it's very, very
24 marginally relevant; so marginally relevant, I think it's a
25 fishing expedition.  But I'm nonethe- -- because no one

1   tested cars, there's some very vague disclaimer, it may vary
2   by models, no testing done on different models, nothing in
3   the research, it talks about Toyota versus Ford versus
4   anything else.
5         But I -- only because of Rule 26, very, very broad
6   reach, and because you've offered to pay for everything, so
7   there's no burden on the plaintiff, my biggest fear is that
8   it is going to muck up the issues in a way that -- and inject
9   an issue in the case that shouldn't be here.  But I am --
10  that's for Judge Wigenton to decide at the end of the day.
11  But given -- given that it's marginally relevant and given
12  that there's no burden, I'm going to let the inspection go
13  forward as requested.
14        Okay?
15        MR. BISHOP:  Thank Your Honor.
16        THE COURT:  Okay.  Do you guys want to take a
17  minute to tell me how that time you need for discovery?  Do
18  you want to talk about it on the record?  Do you want to take
19  a minute?  It doesn't matter to me.
20        MALE SPEAKER:  Could we take a minute?
21        THE COURT:  Sure, of course.  Just let me know when
22  you're ready.  I'll come back -- PJ will check in a couple of
23  minutes.  PJ Murphy, my --
24           (Recess:  11:47 A.M. to 11:53 A.M.)
25        MR. KEEFE:  -- I started --

```
 1                THE COURT:  Okay.
 2                MR. KEEFE:  -- I'd like to get back to you in two
 3    weeks on schedule.
 4                THE COURT:  No problem.
 5                MR. KEEFE:  You know, the issue is Mr. Bishop's
 6    going to get back to me on 1.10, what it's going to look like
 7    and when he's going to produce it.  That will trigger, number
 8    one, our starting of the briefing.  And I -- we do have a
 9    good idea about that.
10                The next trigger then becomes as a result of the
11    inspection -- I would just ask Mr. Bishop that we need to
12    discuss is that going to be some type of report, affidavit,
13    going to be used in opposition, that will affect our briefing
14    schedule that we --
15                THE COURT:  Because you may need to do a -- get
16    your own -- retain an expert or --
17                MR. KEEFE:  Right.  And we may use that for reply
18    purposes, but we -- I think we now have to build that into
19    the -- the plan.
20                So I'm not giving you a direct answer other than to
21    tell you we'd like to get back to you within two weeks to --
22                THE COURT:  No problem, just send me a proposed
23    order.
24                MR. KEEFE:  Right.
25                THE COURT:  And if you want to tie it to certain
```

```
 1  times or whatever, it can be flexible, we could change it,
 2  depending on what happens.
 3          MR. KEEFE:  Okay.
 4          THE COURT:  All right?  Are we done?
 5          MR. BISHOP:  Thank Your Honor.
 6          THE COURT:  Good.
 7          (Conclusion of proceedings at 11:54 A.M.)
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

```
 1                        Certification
 2        I, SARA L. KERN, Transcriptionist, do hereby certify
 3   that the 19 pages contained herein constitute a full, true,
 4   and accurate transcript from the official electronic
 5   recording of the proceedings had in the above-entitled
 6   matter; that research was performed on the spelling of proper
 7   names and utilizing the information provided, but that in
 8   many cases the spellings were educated guesses; that the
 9   transcript was prepared by me or under my direction and was
10   done to the best of my skill and ability.
11         I further certify that I am in no way related to any of
12   the parties hereto nor am I in any way interested in the
13   outcome hereof.
14
15
16
17
18    S/ Sara L. Kern                              May 13, 2013
19    Signature of Approved Transcriber              Date
20
21
     Sara L. Kern, CET**D-338
22   King Transcription Services
     901 Route 23 South, Center Suite 3
23   Pompton Plains, NJ 07444
     (973) 237-6080
24
25
```